STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Mutual Company, Appellant (Defendant),

v.

Donna R. SHRADER and Terry Shrader, Appellees (Plaintiffs).

Donna R. SHRADER and Terry Shrader, Appellants (Plaintiffs),

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Mutual Company, Appellee (Defendant).

Nos. 93–26, 93–27.

Supreme Court of Wyoming.

Sept. 29, 1994.

Lawrence A. Yonkee and Lynne A. Collins of Yonkee & Toner, Sheridan, for State Farm Mut. Auto. Ins. Co.

R. Douglas Dumbrill of Hughes & Dumbrill, Sundance, for Donna R. Shrader and Terry Shrader.

George E. Powers, Jr. and John A. Coppede of Godfrey & Sundahl, Cheyenne, for amicus curiae Farmers Ins. Exchange.

Before THOMAS, CARDINE,\* MACY,\*\* and TAYLOR, JJ., and ROONEY, Ret.J.

TAYLOR, Justice.

These consolidated appeals follow a jury's verdict that an insurer breached a contract of insurance, breached the implied covenant of good faith and fair dealing and breached statutory duties. The jury also found the insurer had engaged in willful and wanton misconduct in delaying payment of the insured's claim for benefits following an accident caused by an uninsured motorist. The insurer contends numerous errors of law and procedure occurred which require reversal. The insured brings a cross-appeal to challenge a directed verdict granted in favor of the insurer on one issue. The district court ruled the evidence did not support the verdict of willful and wanton misconduct; therefore, no punitive damages were available.

We reverse and remand for a new trial on all issues.

## I. ISSUES

In Appeal No. 93–26, appellant, State Farm Mutual Automobile Insurance Company, states numerous claims of error:

1. Is an insurer entitled to reasonably pursue a debate respecting the amount of damages the insured is legally entitled to recover from an uninsured motorist, when the amount of damages has not been determined, without exposure to a claim of violation of the duty of good faith and fair dealing?

2. Does the insured have the burden of proving that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability?

3. Does a claim for uninsured motorist benefits become ex contractu and thus payable only after the extent of damages recoverable from the uninsured motorist has been determined?

4. Under Wyoming law can an insured bring a direct action against the insurer to adjudicate the amount of damages an insured is legally entitled to collect from the driver of an uninsured vehicle?

5. Can attorney fees and interest be recovered under W.S. § 26–15–124(c) for an insurer's refusal to pay a fairly debatable claim?

6. Did the District Court err by denying Appellant's motion under W.R.C.P. Rule 42(b) for a separate trial of Appellee's claim for injuries arising out of the automobile accident?

7. In an uninsured motorist case is it permissible to litigate in the same jury trial, over the objection of the insurer, issues respecting the negligence of the uninsured motorist; the amount insureds were legally entitled to recover from the uninsured motorist; alleged bad faith refusal to settle uninsured motorist claims;

\* Retired July 6, 1994.

\*\* Chief Justice at time of oral argument.

alleged unreasonable refusal to pay an uninsured motorist claim; the elements and amount of damages insureds sustained as a result of bad faith; and, alleged wrongdoing which would justify an award of punitive and exemplary damages?

8. Under the circumstances of this case, was it error to instruct the jury that obligations of good faith and fair dealing encompass qualities of decency and humanity inherent in the responsibilities of a fiduciary; that insurers hold themselves out as fiduciaries, etc.?

9. Was Instruction No. 23 defining good faith and fair dealing inconsistent, misleading and confusing in relation to other instructions given by the court?

10. Did the District Court err in Instruction No. 25 concerning the role of investigation in insurer good faith, because it omitted the principle that lack of investigation without more is not sufficient basis for recovery if the insurer had a reasonable basis to deny or delay payment; and if such basis exists, there is no bad faith?

11. Was it error to give Instruction No. 26 concerning the duty of an insurer to make disclosure of all benefits and coverage provided by an applicable policy for the reason that the disclosure duties set out in the instruction are too broad and contrary to the rule contained in *Darlow?*

12. Where Appellant had neither refused to pay a claim nor made any subsequent payment, was it error to instruct the jury: "Only a showing of an initial bad faith refusal to pay a claim, not a showing of its ultimate nonpayment, is a required element of the breach of the duty of good faith?"

13. Did the District Court err in instructing the jury on the elements of loss of enjoyment of life, emotional distress or mental anguish as damages recoverable for bad faith?

14. Did the District Court commit error by refusing to instruct the jury on the full text of W.S. § 26–15–124 concerning the 45–day rule and unreasonable failure to pay a claim?

15. Was it error to give a special verdict form under the circumstances of this

case with a question whether State Farm breached its statutory duty by unreasonably and without cause refusing to pay the full amount of the loss covered by the policy?

16. Did the District Court err in awarding prejudgment interest beginning from December 21, 1989?

17. Did the District Court err in awarding attorney fees greater than the amount Appellees agreed to pay pursuant to a contingent fee agreement?

Appellees, Donna R. Shrader and Terry Shrader, summarize the issues in Appeal No. 93–26:

1.) Given the public policy of Wyoming Statute § 31–10–101, must the insureds under uninsured motorist coverage reduce their claim to judgment before they can proceed against their insurance company for its breach of contract and bad faith?

2.) Does the commission of the tort of bad faith recognized in *McCullough* carry the responsibility of damages generally assessed for tortuous conduct in Wyoming?

3.) Are uninsured motorist carriers entitled to special procedural privileges in bad faith cases?

4.) Did the jury instructions as given prejudice the rights of State Farm under the law?

5.) Did the trial court abuse its discretion in assessing costs and attorney's fees against State Farm?

In Appeal No. 93–27, appellants, Donna R. Shrader and Terry Shrader, state one issue:

When a jury verdict of first party bad faith is supported by substantial evidence and that bad faith was intentional, dishonest, and institutionalized, should the trial court be allowed to disregard that same jury's verdict of willful and wanton misconduct.

Appellee, State Farm Mutual Automobile Insurance Company, rephrases:

Was the jury's finding that the Shraders were entitled to punitive damages unsupported by substantial evidence, such that the District Court correctly granted Appel-

lee State Farm's motion for directed verdict on the issue of punitive damages?

In Appeal No. 93–27, amicus curiae, Farmers Insurance Exchange, finds three issues:

 1. Did the district court properly determine that the evidence adduced at trial would not sustain [a] finding of willful and wanton misconduct or an award of punitive damages.

 2. Did the Plaintiffs have a valid cause of action for bad faith or should their claims have been limited to an action for contractual benefits, thereby making any claim for punitive damages moot as a matter of law.

 3. Did the district court commit error when it instructed the jury that insurers are "fiduciaries" and does this error compromise the jury's finding of bad faith, thereby rendering the jury's finding of willful and wanton misconduct erroneous as well.

## II. FACTS

On September 18, 1989, Donna Shrader (Shrader) drove through an intersection in Newcastle, Wyoming known as "thrill hill." At the same time, a sixteen-year-old youth driving a truck careened through the intersection ignoring a stop sign. The truck hit Shrader's car broadside.

Shrader's injuries included a fractured pelvis, a fractured clavicle, abrasions and a hematoma on her forehead. She spent ten days in the hospital and another seven weeks on crutches recovering from her injuries. Shrader returned to work in January of 1990. However, Shrader quit her job in May of 1990 partly because of the constant pain and fatigue from her injuries.

The sixteen-year-old youth was an uninsured motorist. Shrader, however, was insured by State Farm Mutual Automobile Insurance Company (State Farm). Shrader's policy with State Farm included a provision requiring coverage of claims for benefits as a result of an accident with an uninsured motorist.

 [State Farm] will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.* The *bodily injury* must be caused by [an] accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*

(Emphasis in original.) The policy limited coverage for accidents involving an uninsured motorist to $25,000.00 per person and $50,-000.00 per accident.

State Farm Claim Representative Kevin Holt (Holt) investigated the accident. He determined that the sixteen-year-old youth was driving an uninsured vehicle. Holt also concluded that the uninsured motorist had failed to stop at the stop sign. Despite his findings, Holt initially assigned between zero to ten percent of the fault for the accident to Shrader. Holt told Shrader and her husband Terry Shrader (collectively Shraders) that their State Farm policy provided uninsured motorist coverage, coverage for medical payments and for towing charges. State Farm eventually paid $5,326.39 in medical bills under the medical payment provisions of the policy.

On December 21, 1989, State Farm offered to settle the Shraders' uninsured motorist claims for $9,400.00. The settlement offer was in addition to the medical payments. The Shraders rejected the offer and demanded the policy limits. After the Shraders hired an attorney, State Farm increased the settlement offer by $3,500.00. In the revised offer, State Farm admitted that while Shrader's injuries were healing, she would suffer mild residual pelvic pain on a long term basis. The Shraders again rejected the offer and rejected non-mandatory arbitration to determine the uninsured motorist's liability. Various negotiations continued until September of 1990 when the Shraders demanded $24,900.00 and attorney's fees. To support their claim, the Shraders provided a detailed accounting of damages, including: medical costs; past and future loss of earnings; pain, suffering and emotional distress; disability and loss of enjoyment of life; and damages to their car. The estimated total was $197,-840.49 for damages to Shrader and $20,-000.00 in loss of consortium damages for Terry Shrader. State Farm responded with a counter-offer to settle the claim for $13,-000.00.

In October of 1990, the Shraders filed a complaint in district court seeking damages from State Farm for breach of contract; breach of the implied covenant of good faith and fair dealing; breach of statutory duty; and breach of the insurer's duty to investigate the claim. The Shraders also alleged they had a right to recover attorney's fees and interest under Wyo.Stat. § 26–15–124(c) (1991).

In its answer, State Farm admitted that the proximate cause of the damages the Shraders suffered was the negligence of an uninsured motorist. State Farm also admitted that as the Shraders' insurer, State Farm had a coverage obligation under its policy but maintained that a determination of the liability of the uninsured motorist was a "condition precedent" to a direct action against the insurer. State Farm averred that since no determination of the uninsured motorist's liability had been made, the Shraders' direct action was premature.

During discovery, State Farm filed a motion for summary judgment arguing again that a determination of the uninsured motorist's liability was a "condition precedent" to maintaining a direct action against the insurer. State Farm contended that until the liability determination had been made, the Shraders could not maintain an action for breach of contract or breach of the implied covenant of good faith and fair dealing. State Farm also asserted that until the liability of the uninsured motorist was determined, the amount of damages due to the Shraders remained fairly debatable precluding a recovery for breach of the implied covenant. The district court denied the motion for summary judgment. The district court ruled that since the negligence of the uninsured motorist was "so clear in this case," State Farm's argument that liability must be determined prior to any direct action against the insurer was "untenable." The district court also denied a State Farm motion to reconsider.

State Farm then filed a motion to bifurcate the proceedings. State Farm again maintained that an insured could not bring a direct action against the insurer until the liability of the uninsured motorist had been determined. As a result, State Farm sought a separate trial to determine the liability of the uninsured motorist. State Farm also argued that, unless proceedings were bifurcated, it would be prejudiced in the liability proceeding by the introduction of evidence of insurance and settlement information. The district court denied the motion. A single trial was held on all issues.

The jury returned a special verdict finding that the uninsured motorist's liability for the damages caused to Shrader was $70,000.00. The jury also found that the uninsured motorist's liability for loss of consortium damages suffered by Terry Shrader was $9,500.00. The jury found that State Farm had tortiously breached the implied covenant of good faith and fair dealing. As a result, the jury determined that the Shraders should each receive $25,000.00 for the breach of the implied covenant. The jury found that State Farm breached its statutory duty by unreasonably and without cause refusing to pay the full amount of covered loss under the policy. In addition, the jury found that State Farm had engaged in willful and wanton misconduct, so that punitive damages could be awarded.

Following the verdict, State Farm renewed a motion for a directed verdict or a judgment notwithstanding the verdict. State Farm argued that there was insufficient evidence to support a finding of willful and wanton misconduct. The district court agreed and granted a directed verdict. Therefore, no punitive damages were awarded.

In its final judgment, the district court awarded the Shraders: damages of $25,000.00 for breach of contract minus $2,016.00 previously paid; damages totaling $50,000.00 for breach of the implied covenant of good faith and fair dealing; and costs, attorney fees and interest totalling $49,779.43 for breach of statutory duties.

## III. DISCUSSION .

These consolidated appeals follow the entry of a special verdict and judgment and a directed verdict. State Farm does not challenge the admissibility of the evidence or the sufficiency of the evidence to support the

special verdict and judgment. Therefore, the dispositive issues in Appeal No. 93–26 are those which challenge: errors of law in rulings of the district court; the fairness of the procedure used at trial; or the errors of law contained in the instructions given to the jury.

In the presentation of the numerous issues, however, the parties have generally failed to discuss points of law which are critical to this court and to the outcome of many appeals. *See Fox v. C.I.R.,* 718 F.2d 251, 253 (7th Cir.1983). The standards of appellate review utilized to test the proceedings in district court were disregarded. *See* W.R.A.P. 7.01(f). Therefore, we find it necessary to address the issues in a different progression than that stated by the parties.

## A. *Denial of Summary Judgment*

We begin with the contention that the district court erred in denying State Farm's pretrial motion for partial summary judgment. We need not consider this argument.

The denial of a motion for summary judgment is not an appealable order. *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1,* 763 P.2d 1255, 1257 (Wyo.1988); *Kimbley v. City of Green River,* 663 P.2d 871, 888 (Wyo.1983); *Boyles Galvanizing & Plating Co. v. Hartford Acc. & Indem. Co.,* 372 F.2d 310, 312 (10th Cir. 1967). When a motion for summary judgment is denied, an interlocutory order is issued after the district court rules that genuine issues of material fact are disputed and the moving party is not entitled to a judgment as a matter of law. W.R.C.P. 56(c). Generally, interlocutory orders are not appealable. W.R.C.P. 54(b). The unresolved issues presented in a motion for summary judgment which is denied merge with the final judgment which is subject to appeal. *Morgan v. American University,* 534 A.2d 323, 327 (D.C.App.1987). However, even in an appeal of a final judgment, the pre-trial denial of a motion for summary judgment is not generally reviewed. *All–States Leasing Co. v. Pacific Empire Land Corp.,* 31 Or. App. 733, 571 P.2d 192, 194 (1977). *See* R.F. Chase, Annotation, *Reviewability of Order Denying Motion For Summary Judgment,*

15 A.L.R.3d 899 (1967) (collecting cases). The denial of the summary judgment becomes, in effect, moot except in rare cases. *E.E.O.C. v. Sears, Roebuck & Co.,* 839 F.2d 302, 353 n. 55 (7th Cir.1988); *Fleitz v. Van Westrienen,* 114 Ariz. 246, 560 P.2d 430, 433 (1977).

We find convincing policy reasons to support this view:

> The final judgment in a case can be tested upon the record made at trial, not the record made at the time summary judgment was denied. Any legal rulings made by the trial court affecting that final judgment can be reviewed at that time in light of the full record. This will prevent a litigant who loses a case, after a full and fair trial, from having an appellate court go back to the time when the litigant had moved for summary judgment to view the relative strengths and weaknesses of the litigants at that earlier stage. Were we to hold otherwise, one who had sustained his position after a fair hearing of the whole case might nevertheless lose, because he had failed to prove his case fully on an interlocutory motion.

*Evans v. Jensen,* 103 Idaho 937, 655 P.2d 454, 459 (1982). *Accord Home Indem. Co. v. Reynolds & Co.,* 38 Ill.App.2d 358, 187 N.E.2d 274, 278 (1962).

## B. *Direct Action Against The Insurer*

State Farm contends that the district court committed an error of law by permitting a direct action against an insurer prior to a determination of the liability of the uninsured motorist. State Farm takes the position that until the Shraders establish the degree of fault and the amount of damages caused by the uninsured motorist, the Shraders are not legally entitled to recover damages under the policy. Accordingly, State Farm argues no direct action against State Farm is permitted until this "condition precedent" is satisfied. We disagree.

This court accords no deference to and is not bound by the district court's rulings on issues of law. *True Oil Co. v. Sinclair Oil Corp.,* 771 P.2d 781, 788–89 (Wyo. 1989). State Farm's arguments required the

district court to interpret the language of the parties' agreement, the insurance policy. Therefore, in reviewing the district court's decision to permit a direct action, this court will apply our established rules of contract interpretation to the language of the State Farm policy. A complete review of the applicable rules is contained in *Doctors' Co. v. Insurance Corp. of America,* 864 P.2d 1018, 1023–27 (Wyo.1993).

Before considering the specific language of the State Farm policy, however, we must examine the statutory requirements that place public policy limitations on uninsured motorist coverage. State Farm argues that, under Wyoming law, the fault of the uninsured motorist and the amount of damages an insured is entitled to collect cannot be determined in a direct action against the insurer. We disagree.

■ In Wyoming, the legislature has mandated the availability of uninsured motorist coverage:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits· for bodily injury or death as provided by W.S. 31–9–102(a)(xi), under provisions approved by the insurance commissioner for the protection of persons insured thereunder or legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The named insured may reject the coverage. Unless the named insured requests the coverage in writing, the coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer.

Wyo.Stat. § 31–10–101 (1994). The Wyoming Uninsured Motorist Act, Wyo.Stat. §§ 31–10–101 to 31–10–104 (1994), is de-signed to furnish protection, by insurance, for the victims of uninsured motorists. *Ramsour v. Grange Ins. Ass'n,* 541 P.2d 35, 38 (Wyo.1975). Uninsured motorist coverage compliments financial responsibility legislation, Wyo.Stat. §§ 31–9–101 to 31–9–414 (1994), by providing coverage to innocent persons who suffer damages because of the wrongful conduct of uninsured motorists who are not financially responsible and, therefore, cannot be made to respond in damages. *Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606, 610 (1973). This court has determined that the provisions of the Wyoming Uninsured Motorist Act are remedial in nature and ambiguous language should be liberally construed in favor of the insured with a strict and narrow construction given to exclusions. *Ramsour,* 541 P.2d at 38; 12A Ronald A. Anderson, *Couch Cyclopedia of Insurance Law,* § 45:625 at 39 (2nd ed. 1981).

■ We do not find language in Wyo.Stat. § 31–10–101 which would prevent a direct action by the insured against an insurer to recover a claim for uninsured motorist benefits. Conversely, we do not find language in Wyo.Stat. § 31–10–101 which would require a tort action by the insured against the uninsured motorist as a "condition precedent" to a direct action against the insurer. A fundamental rule of statutory construction states "an absurd result, whenever apparent, is to be avoided." *Stauffer Chemical Co. v. Curry,* 778 P.2d 1083, 1093 (Wyo.1989). It would create an absurd result if an insured, denied the protection of uninsured motorist coverage, was prohibited by the statute that mandates coverage from seeking judicial relief in a direct action against the insurer. If the legislature had intended to restrict the right of a party to the insurance contract to contest a claim for benefits by requiring a tort action against the uninsured motorist prior to instituting a direct action against the insurer, explicit language in the Wyoming Uninsured Motorist Act would be required. *Winner,* 505 P.2d at 610. *See also Helmbolt v. LeMars Mut. Ins. Co., Inc.,* 404 N.W.2d 55, 59 (S.D.1987) (concerning underinsured motorist coverage actions). We hold that as a matter of public policy, the fault of the uninsured motorist and the amount of damages suffered

by the insured may be determined in a direct action against the insurer.

◼ Further support for our position is provided in the holdings of other jurisdictions. *See* Dag E. Ytreberg, Annotation, *Insured's Right to Bring Direct Action Against Insurer for Uninsured Motorist Benefits,* 73 A.L.R.3d 632 (1976 & Supp.1994) (collecting cases). We presume that when the legislature enacts a statute, it is done with full knowledge of the existing condition of the law and as part of a general and uniform system of jurisprudence. *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1044 (Wyo.1993). The language of Wyo.Stat. § 31–10–101 is substantially similar to legislative enactments of thirty-five other states, including: Kansas, K.S.A. § 40–284 (1993); Oklahoma, Okla. Stat.Ann. tit. 36, § 3636 (West Cum.Supp. 1994); and Texas, Tex.Ins.Code Ann. art. 5.06–1 (West 1993). *See* 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance,* § 2.2 n. 1 (2nd ed. 1992) (listing other states).

In a persuasive and comprehensive analysis of other jurisdictions, the Supreme Court of Kansas concluded that the majority of states reject the position urged by State Farm that an insured must first obtain a determination of the fault and damages caused by an uninsured motorist before filing a direct action against the insurer. *Winner,* 505 P.2d at 609–611 (collecting cases). Specifically, the Kansas Supreme Court concluded that uninsured motorist coverage was promulgated to eliminate the "condition precedent" of unsatisfied judgment insurance. *Id.* at 610. In the antecedent of uninsured motorist coverage, unsatisfied judgment insurance, indemnification was provided only when the insured showed that a claim had been reduced to judgment and the insured was unable to collect the judgment. 1 Widiss, *supra,* § 1.9.

In *Associated Indem. Corp. v. Cannon,* 536 P.2d 920, 923 (Okl.1975), the Supreme Court of Oklahoma determined an insured had a right to direct action against the insurer without first obtaining a judgment against an uninsured motorist. The holding was reaffirmed in *Keel v. MFA Ins. Co.,* 553 P.2d 153,

158 (Okl.1976). *See also Roberts v. Mid–Continent Cas. Co.,* 790 P.2d 1121, 1122 (Okl. App.1989). Texas courts also agree that an insured disputing a claim for benefits under an uninsured motorist policy has a right to bring a direct action against the insurer in which the fault and damages caused by the uninsured motorist are determined. *Government Employees Ins. Co. (Geico) v. Lichte,* 792 S.W.2d 546, 548 (Tex.App.1990).

Authoritative commentary also notes the general acceptance of the right of the insured to bring a direct action against the insurer to litigate a disputed claim for benefits under uninsured motorist coverage:

> In a few states, whether an insured is entitled to secure indemnification under the uninsured motorist insurance without first bringing an action against the uninsured motorist continues to be raised as an issue. Unless legislation requires an adjudication of the tort claim against the uninsured motorist, the right of the insured to proceed with the uninsured motorist claim should be beyond dispute given the coverage terms and the historical developments that led to the development of this coverage.

2 Widiss, *supra,* § 29.1 at 447 (footnote omitted).

Despite the failure of Wyo.Stat. § 31–10–101 to expressly exclude a direct action against the insurer or require an action against the uninsured motorist, State Farm argues that being "legally entitled" to collect or recover damages requires the fault and damages caused by the uninsured motorist to be determined in a separate action. Again, we disagree.

◼ Both Wyo.Stat. § 31–10–101 and the State Farm policy with the Shraders utilize similar language to state the right of an insured to recover under uninsured motorist coverage. The statute refers to being "legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom." The State Farm policy refers to being "legally entitled to collect from the owner or driver of an uninsured motor vehicle."

This court has never interpreted this language, in either the statute or a similar policy; however, other jurisdictions have considered similar language to determine if it would restrict the right of an insured to institute a direct action against the insurer prior to a determination of the fault and damages caused by an uninsured motorist. In *Winner*, 505 P.2d at 610, the court construed the words "legally entitled to recover as damages" to mean "the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages." The court in *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 685 (Okl.1983) held "legally entitled to recover" to mean "that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages." The common thread in these and other judicial constructions of the "legally entitled" language is that the insured is indemnified when damages are proximately caused by the negligence of an uninsured motorist. 1 Widiss, *supra*, § 7.2 at 247. The limitation of this language is that indemnification is not available under uninsured motorist coverage in the absence of negligence. *Id.*

The Shraders' complaint against State Farm alleged: (1) the existence of insurance for uninsured motorist coverage by State Farm; (2) the extent of damages suffered by the Shraders; and (3) the negligence of the uninsured motorist. This was a sufficient showing that the Shraders were "legally entitled to recover damages" under the language of Wyo.Stat. § 31–10–101 or "legally entitled to collect" under the language of the State Farm policy. *See* 1 Widiss, *supra*, § 7.3 at 250. Even prior to filing the complaint, the Shraders presented a sufficient showing that they were "legally entitled" to collect or recover damages. State Farm acknowledged the existence of insurance coverage for the Shraders and the negligence of the uninsured motorist. The Shraders offered a specific showing of damages they suffered as a result of the accident as a part of their claim for benefits of $24,900.00. We hold that the Shraders established that they were "legally entitled" to seek indemnification for the damages proximately caused by the negligence of the uninsured motorist.

State Farm argues that while it never disputed the existence of the coverage or the negligence of the uninsured motorist, it has always disputed the extent of the damages suffered by the Shraders. State Farm contends that the Shraders had to exhaust their options under the policy to establish the extent of their damages before initiating a direct action against State Farm. According to State Farm, the Shraders had three choices to determine the fault and the extent of damages caused by the uninsured motorist: obtaining a judgment against the uninsured motorist; negotiating with State Farm until an agreement was reached; or submitting to non-mandatory arbitration. The policy language does not support State Farm's position.

The State Farm policy with the Shraders includes the following relevant language in the uninsured motorist provision:

**Deciding Fault and Amount**

Two questions must be decided by agreement between the *insured* and us:

1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle;* and

2. If so, in what amount?

If there is no agreement, these questions shall be decided by arbitration upon written request of the *insured.* Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one.

The cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

The arbitration shall:

1. take place in the county in which the *insured* resides unless the parties agree to another place;

2. use state court rules governing procedure and admission of evidence; and

3. not be binding without the right of appeal unless we and the **insured** make a separate agreement to be bound.

(Emphasis in original.)

The language of the policy misinformed the Shraders of their rights. State Farm does not dispute that if the Shraders had desired, they could have filed a lawsuit against the uninsured motorist to determine fault and the amount of damages. *See, e.g., Ramsour*, 541 P.2d at 35; *Winner*, 505 P.2d at 611; and *Keel*, 553 P.2d at 158. We interpret the language of the State Farm policy as attempting to restrict this right.

■ In Wyoming, the Department of Insurance has promulgated regulations addressing uninsured motorist coverage:

Section 8. *Consent to Sue Clause.* In no instance shall any uninsured motorists coverage circulated within the State of Wyoming contain any policy language which forbids the insured to prosecute an action against an uninsured motorist without the written consent of the insurer. The insurer, however, shall be entitled to a copy of the complaint and summons forthwith in the event the insured decides to initiate a lawsuit.

Wyo. Dept. of Insurance Reg., Chap. XXIII, § 8 (1989). The intent of this regulation is to protect the right of the insured to seek a determination of fault and damages by filing a tort action against the uninsured motorist.

■ The mandatory language of the State Farm policy declares: "Two questions **must** be decided by **agreement** between the insured and us * * *." (Emphasis added.) This language attempts to restrict the insured's right to sue the uninsured motorist by requiring either agreement between State Farm or arbitration to determine the fault and extent of damages caused by the uninsured motorist. The language of the policy also fails to preserve the insured's right, under Wyo.Stat. § 31–10–101, to file an action directly against the insurer to determine the fault caused by the uninsured motorist and the amount of damages suffered. We hold that the language of the State Farm

policy as it attempts to limit the rights of the insured to institute action against the uninsured motorist and to institute action against the insurer is void as against public policy. *See Boughton v. Farmers Ins. Exchange*, 354 P.2d 1085, 1089 (Okl.1960) (holding provisions of uninsured motorist policy void because policy restricted insured from enforcing his rights in court).

■ From our analysis, we are able to determine that the Shraders had several alternatives available to determine the fault of the uninsured motorist and extent of their damages after making a claim for benefits under the uninsured motorist coverage issued by State Farm:

1. Reaching an agreement on the issues of fault and damages by negotiation between the insured and the insurer.

2. Submitting the fault and damages issues to arbitration in accord with Wyo. Dept. of Insurance Reg., Chap. XXIII, § 9 (1989) which prohibits mandatory arbitration between the insured and the insurer and permits binding arbitration without the right of appeal only by separate agreement.

3. Filing a tort action against the uninsured motorist and litigating issues of fault and damages after providing the insurer with a copy of the complaint and summons. Wyo. Dept. of Insurance Reg., Chap. XXIII, § 8 (1989).

4. Filing a direct action against the uninsured motorist and joining the insurer as a party defendant. *See Ramsour*, 541 P.2d at 35.

5. Filing a direct action against the insurer in which issues of fault and damages are determined as part of the breach of contract claim. *Winner*, 505 P.2d at 611; *Keel*, 552 P.2d at 158.

We hold the district court did not commit an error of law in permitting the Shraders to institute a direct action against State Farm prior to a determination of the liability of the uninsured motorist.

### C. Implied Covenant of Good Faith and Fair Dealing

State Farm contends that the district court erred as a matter of law in permitting the Shraders to state a cause of action for breach of the implied covenant of good faith and fair dealing. We do not agree.

 The implied covenant of good faith and fair dealing is present in every contract:

> § 205 Duty of Good Faith and Fair Dealing
>
> Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

Restatement (Second) of Contracts § 205 (1981). Wyoming has recognized that a breach of the implied covenant of good faith and fair dealing may be actionable in contract for compensatory damages. *Arnold v. Mountain West Farm Bureau Mut. Ins. Co., Inc.*, 707 P.2d 161, 164 (Wyo.1985). Wyoming has also acknowledged that a breach of the implied covenant of good faith and fair dealing which rises to the level of an independent tort is actionable for compensatory and punitive damages under proper circumstances. *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 860–61 (Wyo.1990). A recovery in tort for the breach of the duty of good faith and fair dealing is premised upon the existence of a special relationship created by the unequal bargaining power that an insurer has over an insured. *McCullough*, 789 P.2d at 858.

In *McCullough*, 789 P.2d at 855, this court adopted the independent tort theory expressed in *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). In *Gruenberg*, the Supreme Court of California recognized that the duty of good faith and fair dealing imposes an obligation " 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.' " *Id.* 108 Cal.Rptr. at 484, 510 P.2d at 1036 (*quoting Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198, 200 (1958)). Liability, in tort, is imposed not for a bad faith breach of contract, but for the failure to comply with the duty of good faith and fair

dealing. *Id.* 108 Cal.Rptr. at 485, 510 P.2d at 1037. The duty of good faith and fair dealing is not a requirement mandated by the terms of the policy.

> It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.

*Id.* (emphasis in original). The Supreme Court of California concluded that when an insurer unreasonably and in bad faith withholds payment of the claim for benefits made by its insured, the insurer is subject to liability in tort.

 In *McCullough*, Wyoming adopted an objective standard of care as a measure of the required conduct of insurers as stated in *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). Under this standard, "where a claim was *not fairly debatable*, refusal to pay would be bad faith and, under appropriate facts, could give rise to an action for tortious refusal to honor the claim." *Id.* 271 N.W.2d at 374 (emphasis added). A claim is "fairly debatable" when a reasonable insurer would have denied or delayed payment of the claim for benefits under the facts and circumstances. *McCullough*, 789 P.2d at 860; *Anderson*, 271 N.W.2d at 376. Therefore, to establish a breach of the duty of good faith and fair dealing, the insured must show: (1) the absence of any reasonable basis for denying a claim for benefits; and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim for benefits. *Darlow v. Farmers Ins. Exchange*, 822 P.2d 820, 824 (Wyo.1991); *McCullough*, 789 P.2d at 860 (quoting *Anderson*, 271 N.W.2d at 376).

Wyoming has recognized that a breach of the duty of good faith and fair dealing may give rise to actions for independent torts of "first party" or "third party" bad faith:

A cause of action for "third party" bad faith will lie when a liability insurer fails in bad faith to settle a third-party claim within policy limits against its insured. *Western Casualty and Surety Company v. Fowler*, 390 P.2d 602 (Wyo.1964). Bad faith in this context would occur if an excess judgment were obtained under circumstances when the insurer failed "to exercise intelligence, good faith, and honest and conscientious fidelity to the common interest of the [insured] as well as of the [insurer] and [to] give at least equal consideration to the interest of the insured." *Id.* at 606. A cause of action for "first party" bad faith will lie when an insurer in bad faith refuses to pay its insured's direct claim for policy benefits. *McCullough v. Golden Rule Insurance Co.*, 789 P.2d 855 (Wyo.1990). Bad faith in this context would occur if an insurer knowingly or recklessly denied a first-party claim for insurance benefits without having a reasonable basis for doing so. *Id.* at 860. An action for "first party" bad faith will also lie when an insurer fails to inform its insured of first-party policy benefits where the insured brings a third-party liability claim against another of the insurer's insureds and "it is apparent to the insurer that (1) there is a strong likelihood that its insured only can be compensated fully under her own policy and (2) the insured has no basis to believe that [she] must rely upon [her] policy for coverage." *Darlow v. Farmers Insurance Exchange*, 822 P.2d 820, 828 (Wyo.1991).

*Herrig v. Herrig*, 844 P.2d 487, 490–91 (Wyo. 1992).

State Farm broadly contends that it owed no duty of good faith and fair dealing to the Shraders as a matter of law. State Farm reaches this position by arguing that a claim for uninsured motorist benefits should be treated as a third party claim until the liability of the uninsured motorist is determined. This is not a correct statement of the law in Wyoming.

 Uninsured motorist insurance provides first party coverage. *Uptegraft*, 662 P.2d at 684; 12A Anderson, *supra*, § 45:624 at 35. The insured involved in an accident with an uninsured motorist makes a direct claim for benefits to the insurer. This type of claim conforms with the traditional definition of a first party claim which is that the insured personally files a claim for benefits against the insurer under the policy. *Herrig*, 844 P.2d at 490–91; *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014, 1016 (1986). Strong public policy arguments under Wyo.Stat. § 31–10–101 support our position:

Unlike any other type of first party insurance, the uninsured motorist coverage is the subject of a legislative mandate in forty-nine states. The various state insurance laws—that establish the requirements for uninsured motorist insurance—are clearly intended to benefit all insureds, and the attainment of this goal certainly encompasses requiring the fair and equitable settlement of uninsured motorist insurance claims. Unreasonable conduct by an insurer frustrates the public policy embodied in the applicable state insurance legislation, as well as breaching the implied-in-law duty to deal fairly and in good faith. Thus, the standard by which the conduct of insurers is judged arguably should be higher for uninsured motorist claims than it is for first party insurance coverages that are not mandated by statute. In other words, given the fact that uninsured motorist insurance is the subject of statutory requirements in forty-nine states, a persuasive argument can be made for the proposition that the duty of an insurer to act in good faith and fairly should be of the highest order in regard to claims arising under this coverage. The public interest in this coverage means that insurers should be obligated to exercise the greatest care and highest level of good faith and fair dealing.

2 Widiss, *supra*, § 20.4 at 161–62 (footnote omitted). *Accord Escalante v. Sentry Ins.*, 49 Wash.App. 375, 743 P.2d 832, 838 n. 7 (1987) (quoting 2 Widiss, *supra*, § 20.3).

State Farm relies upon two Alabama cases to illustrate the distinction in coverage they contend is present in uninsured motorist coverage. In *Quick v. State Farm Mut. Auto. Ins. Co.*, 429 So.2d 1033 (Ala.1983), the court

found there was an inherent difference between uninsured motorist coverage and first party insurance. "The provisions of uninsured motorist coverage reorder the normal postures between an insured and an insurer. Thus, until the liability of the uninsured motorist has been determined, the insurer and insured occupy an adversary position toward each other." *Id.* at 1035. In *LeFevre v. Westberry*, 590 So.2d 154, 159 (Ala.1991), the court determined that uninsured motorist coverage in Alabama is a "hybrid" blend of features of both first party and third party coverage.

We decline to adopt the "hybrid" view of uninsured motorist coverage urged by State Farm. We agree with the view expressed by the Supreme Court of Idaho in *Sullivan v. Allstate Ins. Co.*, 111 Idaho 304, 723 P.2d 848, 850 (1986). After noting the various arguments about the relationship of the parties under uninsured coverage, the Idaho court stated it did not agree with courts such as in *Quick* that consider the legal relationship between the insured and the insurer to be adversarial until the liability of the uninsured motorist is determined.

■■■ The premise of the adversarial relationship argument is that the insurer occupies a position of "substituted liability" for the uninsured motorist. While this is true with regard to the ability of the insurer to assert the defenses that would be available to the uninsured motorist, including the comparative negligence of the insured, *Winner*, 505 P.2d at 610, "substituted liability" does not obviate the insurer's duty of good faith and fair dealing. In *Craft v. Economy Fire & Cas. Co.*, 572 F.2d 565, 568 (7th Cir.1978), Judge Harlington Wood, Jr. considered the "substituted liability" contentions of an insurer applying Indiana law:

> We conclude that there is nothing inherent in the nature of uninsured motorist protection that is inconsistent with a requirement that the insurance company attempt in good faith to reach agreement with its insured and that any attempt to force the insured to settle for less than his claim be predicated on a bona fide dispute as to the amount of liability.

We hold an insurer providing uninsured motorist coverage under Wyo.Stat. § 31–10–101 owes a duty of good faith and fair dealing to the insured at all times. In *Darlow*, 822 P.2d at 827, we cited with approval the decision of the Supreme Court of Tennessee in *MFA Mut. Ins. Co. v. Flint*, 574 S.W.2d 718 (Tenn.1978). In *MFA Mut. Ins. Co.*, the court held that "an insurer is under the duty of dealing with its insured 'fairly and in good faith' in settling a claim by its insured under the uninsured motorist provision of an automobile liability insurance contract." *Id.* at 721. The *MFA Mut. Ins. Co.* court correctly assessed the scope of the duty of good faith and fair dealing and held that an insurer as a part of its duty of good faith is required to inform the insureds of the extent of the coverage afforded them under their policy before negotiating a settlement, especially when it is apparent that the insured does not know the extent of available coverage. *Id.* at 722. The court found that the failure of the insurer to inform the insureds of their right to compensation for past or future pain and suffering, future loss of earning capacity, or past or future loss of enjoyment as a result of the permanent injuries the insureds suffered had breached the duty of good faith and fair dealing. *Id.* In *Craft*, the court held that an insurer who attempts to force the insured to settle an uninsured motorist claim for less than the amount claimed, without a reasonable basis to deny the claim, breaches its duty of good faith and fair dealing. *Craft*, 572 F.2d at 571. We join these jurisdictions in accepting the proposition that the duty of good faith and fair dealing acknowledges the unequal bargaining power and reasonable expectations of the insured seeking indemnification under terms of uninsured motorist coverage.

State Farm also contends that the Shraders' cause of action for breach of the implied covenant of good faith and fair dealing was barred as a matter of law because the extent of damages remained fairly debatable until the liability of the uninsured motorist was determined. The primary support State Farm cites for this position is *Wilson v. State Farm Mut. Auto. Ins. Co.*, 795 F.Supp. 1077 (D.Wyo.1992). We do not read the holding in *Wilson* as broadly as State Farm urges.

In *Wilson,* the United States District Court for the District of Wyoming held that the insured had failed to prove the extent of the damages he suffered; therefore, the amount of his claim for benefits remained "fairly debatable." *Id.* at 1081. As a result, the court granted a partial summary judgment in favor of the insurer on a claim for breach of the duty of good faith and fair dealing. *Id.* The insured was injured in an accident caused by an uninsured motorist. The insured refused a settlement offer and demanded the policy limits from the insurer. However, the insured failed to determine that his injuries were in fact worth the policy limits of all available coverage. *Id.* Also, evidence of loss of income was disputed by federal income tax returns which showed a substantial discrepancy between the claimed loss and actual income of the insured. *Id.*

The reading that State Farm gives to *Wilson,* and similar cases, would make any claim for benefits "fairly debatable," as a matter of law, until the insured secured a judgment against the uninsured motorist, obtained an agreement with the insurer on liability issues, or submitted to arbitration. The public policy of Wyo.Stat. § 31–10–101 and the objective view "fairly debatable" standard do not comprehend this degree of certainty.

The Shraders presented State Farm with a specific and detailed accounting of damages they had suffered as a part of their claim for benefits of $24,900.00. The Shraders' unchallenged proof of damages exceeded the amount claimed by a substantial amount. Therefore, the Shraders had satisfied their initial burden of proving the absence of a reasonable basis for the insurer to deny the claim for benefits. *Darlow,* 822 P.2d at 824. If State Farm disputed the amount of this claim, it had a duty to inform the Shraders of the reasonable basis it asserted for denying the claim, such as specific facts it contended were erroneous or inflated. In other words, to establish that the claim remained "fairly debatable," as a matter of law, the burden of persuasion shifted to State Farm to show that a bona fide dispute remained. Without a sufficient showing, such as that demonstrated in *Wilson,* the jury was entitled to receive evidence on the cause of action for breach of the implied covenant of good faith and fair dealing.

State Farm maintains that the district court erred in permitting the Shraders to argue that a failure to investigate or evaluate a claim was sufficient to establish a breach of the duty of good faith and fair dealing. In presenting this argument, State Farm relies upon unpersuasive authority from other jurisdictions and ignores the mandatory authority of this court in *Hatch v. State Farm Fire and Cas. Co.,* 842 P.2d 1089 (Wyo.1992) and *Darlow,* 822 P.2d at 826.

In *Darlow,* we accepted the view that the subsequent payment of a denied or unreasonably delayed claim does not absolve an insurer from compliance with the duty of good faith and fair dealing. *Darlow,* 822 P.2d at 826. *Hatch* used this framework to recognize that even if a claim for benefits is fairly debatable, the insurer may breach the duty of good faith and fair dealing by the manner in which it investigates, handles or denies a claim. *Hatch,* 842 P.2d at 1099. The conclusion drawn from both *Darlow* and *Hatch* is that while an insured may state causes of action for breach of contract and breach of the duty of good faith and fair dealing, the insured does not need to prevail on the contract claim to prevail on the claim for breach of the duty of good faith and fair dealing. *Hatch,* 842 P.2d at 1099 (*quoting Deese v. State Farm Mut. Auto. Ins. Co.,* 172 Ariz. 504, 838 P.2d 1265, 1270 (1992)).

We hold the district court did not commit an error of law in permitting the Shraders to state a cause of action for breach of the duty of good faith and fair dealing.

D. *Motion to Bifurcate the Proceedings*

State Farm argues that if there were valid causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, those causes of action and other issues should have been tried separately from the portion of the trial dealing with the liability of the uninsured motorist. The argument State Farm presented at the district court in favor of bifurcated proceedings contained several compo-

nents. Many of those issues have already been addressed; therefore, we need only address issues related to the introduction of evidence of insurance and evidence of settlement offers.

In certain circumstances, the district court may order a bifurcated trial:

(b) *Separate trials.*—The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

W.R.C.P. 42(b). The decision to order separate trials is within the discretion of the district court and will not be disturbed on appeal unless an abuse of discretion is found. *Carlson v. Carlson,* 836 P.2d 297, 305 (Wyo. 1992); *Tremblay v. Reid,* 700 P.2d 391, 398 (Wyo.1985). On appeal, this court considers an abuse of discretion to have occurred when a court exceeds the bounds of reason or commits an error of law. *Combs v. Sherry–Combs,* 865 P.2d 50, 55 (Wyo.1993); *Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980).

State Farm asserts that evidence of insurance was not admissible in the portion of the trial in which the liability of the uninsured motorist was determined. State Farm contends it suffered prejudice by the introduction of evidence of insurance because of the automatic bias of a jury against insurers. We disagree.

▮ Our rules of evidence prohibit the introduction of evidence to the jury of liability insurance in certain circumstances:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

W.R.E. 411. The purpose of this rule is to prevent the introduction of evidence of insurance in tort actions premised on negligence.

*Carlson v. BMW Indus. Service, Inc.,* 744 P.2d 1383, 1388 (Wyo.1987).

▮ We hold W.R.E. 411 does not prohibit the introduction of evidence of insurance in a direct action on a disputed claim for uninsured motorist benefits brought by the insured against the insurer. State Farm misconceives the determination of the uninsured motorist's liability to be a negligence action. The substance of the Shraders' complaint against State Farm is a coverage dispute under terms of the State Farm policy. Considered from this perspective, the determination of the liability of the uninsured motorist is but an element of the prima facie case for breach of contract. The Shraders had to establish they were "legally entitled" to collect or recover damages to seek indemnification under the contract. The terms of the insurance coverage are material to the determination of the right to indemnification. *Winner,* 505 P.2d at 612; *Cannon,* 536 P.2d at 922–23.

Other courts have permitted evidence of insurance to be introduced when the insured has stated a direct cause of action for negligence against the uninsured motorist and a cause of action against the insurer for breach of contract in the same trial. The court in *Wheeler v. Creekmore,* 469 S.W.2d 559, 563 (Ky.1971) observed:

It is our opinion that the considerations which have prompted the rule against mention of ordinary liability insurance in an automobile negligence case must yield in uninsured-motorist cases to the procedural desirability of letting the jury know who are the parties to the litigation where the uninsured motorist carrier elects to participate actively in the trial.

In *Stanfield v. Kroll,* 484 S.W.2d 603, 608 (Tex.Civ.App.1972), the court ruled that evidence of insurance did not require reversal of a case in which all parties were joined including the uninsured motorist and the insurer. The court said that facts concerning liability insurance coverage were relevant to a material issue and admissible.

We hold that the introduction of evidence of insurance did not result in prejudice to State Farm. The terms of coverage issues

were not distinct and independent issues which would permit bifurcation under W.R.C.P. 42(b). *Carlson*, 836 P.2d at 305.

■ Next, State Farm maintains the introduction of evidence of settlement offers required separate trials on the cause of action for breach of contract and the cause of action for breach of the implied covenant of good faith and fair dealing. We agree.

W.R.E. 408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The purpose of W.R.E. 408 is to encourage the settlement, outside the courthouse, of disputes. *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 36 (Wyo.1983). The reason evidence of settlement negotiations is irrelevant in most proceedings is that the offer of settlement may be motivated by a desire to avoid litigation time and expenses, rather than by any concession of weakness. *Id.*

State Farm admits that the evidence of settlement negotiations was relevant to the cause of action for breach of the implied covenant of good faith and fair dealing to refute claims of undue delay. However, State Farm argues that it suffered prejudice from the introduction of evidence of settlement negotiations during the breach of contract portion of the trial when it was determined that the Shraders were "legally entitled" to indemnification under the State Farm policy. State Farm asserts that the jury's verdict on the breach of contract claim was impermissibly influenced by the settlement offers. The Shraders respond by broadly contending that bifurcation in this case would have resulted in a special procedural advantage for State Farm and would have produced a hardship for the Shraders by requiring additional proceedings.

In *State Farm Mut. Auto. Ins. Co. v. Wilborn*, 835 S.W.2d 260, 261 (Tex.App.1992), the court considered whether evidence of settlement offers required separate trials for causes of action of breach of contract and breach of the implied covenant of good faith and fair dealing. An insured sued State Farm to recover a disputed claim for uninsured motorist benefits. State Farm argued that the introduction of evidence of settlement offers during the breach of contract phase of the trial would be highly prejudicial. However, State Farm admitted that the introduction of evidence of settlement offers would be relevant and admissible during the portion of the trial dealing with breach of the implied covenant. The court agreed with State Farm and held that the introduction of evidence of settlement offers would be prejudicial to a defense of the breach of contract claim. *Id.* at 262. Separate trials were ordered. *Id. Accord U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 673 (Tex.App.1993).

■ Separate trials are not automatically required when an insured brings an action against an insurer for breach of contract and breach of the implied covenant of good faith and fair dealing. *Allstate Insurance Co. v. Hunter*, 865 S.W.2d 189, 193 (Tex.App.1993). Prejudice is only found when the trial of all causes of action unfairly forces the insurer "to choose between 1) insisting on its right to exclude evidence of settlement negotiations and coverage determinations (thereby losing the advantage of showing that it was attempting to be reasonable in defense of the bad faith claims) and 2) putting on such evidence and risking a prejudicial inference that it has admitted liability on the contract action." *Id.* at 193–94. The *Hunter* court determined that severance was not required in that instance because the insurer had failed to meet its burden of alleging specific settlement negotiations or offers which would result in prejudice. *Id.* at 194. The *Hunter* court relied upon the holding of the court in

*Progressive County Mut. Ins. Co. v. Parks*, 856 S.W.2d 776, 779 (Tex.App.1993), which ruled that separate trials were not required in an action where there was no evidence of settlement offers.

 There is no dispute that State Farm presented the Shraders with several offers to settle their claim for benefits. Under W.R.E. 408, State Farm had a right to exclude evidence of the settlement offers to avoid possible prejudice from the seeming admission that the Shraders were "legally entitled" to at least some indemnification under the terms of the State Farm policy. This is the essence of the breach of contract claim. On the other hand, State Farm had a right to introduce evidence of settlement offers during the trial to refute the claims of unreasonable delay inherent in the cause of action for breach of the implied covenant of good faith and fair dealing. W.R.E. 408. The introduction of evidence of settlement offers in a single trial, therefore, was sufficiently prejudicial to State Farm to require bifurcation under W.R.C.P. 42(b). We hold, under Wyoming law, a cause of action for breach of a contract of insurance and a cause of action for breach of the implied covenant of good faith and fair dealing sounding in tort are sufficiently distinct and independent to permit bifurcation of the proceedings when the admission of evidence of settlement negotiations would be prejudicial. *Carlson*, 836 P.2d at 305; W.R.E. 408. *See Hunter*, 865 S.W.2d at 194 and *Wilborn*, 835 S.W.2d at 262.

We do not agree with the Shraders' contention that bifurcation results in a special procedural advantage for the insurer. The exclusion of evidence of settlement negotiations also operates to prevent the jury from making an impermissible inference that the amount of damages claimed by the insured for breach of contract is excessive or that the claim for benefits was excessive because the insurer did not offer a comparable amount. W.R.E. 408. We also do not agree that separate trials on the cause of action for breach of contract and the cause of action for breach of the implied covenant of good faith and fair dealing create a hardship. While some insurers have not objected to a single trial on all issues, *see Arnold*, 707 P.2d at

163–64, separate trials heard by the same jury will not create an undue hardship. *Carlson*, 836 P.2d at 306.

We hold the district court committed an error of law and, therefore, abused its discretion in failing to order bifurcation of the cause of action for breach of contract and the cause of action for breach of the implied covenant of good faith and fair dealing. As we noted in *Carlson*, fairness, logic and case law support a decision to remand the entire case for retrial due to the failure to grant separate trials. *Carlson*, 836 P.2d at 306–07. To facilitate the retrial, we find it necessary to address some of the remaining claims of error. *Rhoades v. K–Mart Corp.*, 863 P.2d 626, 631 (Wyo.1993); *Danculovich v. Brown*, 593 P.2d 187, 194 (Wyo.1979).

### E. *Instructions To The Jury*

State Farm challenges the content of a number of instructions to the jury. The primary contentions are that the challenged instructions contain errors of substantive law. We agree that one instruction was prejudicial.

In reviewing challenges to jury instructions, we are conducting both a procedural review and a substantive review. The procedural component is stated by W.R.C.P. 51 which requires, in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Therefore, on appeal, this court considers a claim of error in jury instruction only where a proper objection is raised. *Triton Coal Co., Inc. v. Mobil Coal Producing, Inc.*, 800 P.2d 505, 510 (Wyo.1990) (collecting cases). When a party fails to properly object, our review is limited to the application of the plain error doctrine. *Id.* at 511. The purpose of requiring an objection under W.R.C.P. 51 is to inform the district court of the nature of the contended error and the specific grounds of objection so that the district court may exercise judicial discretion in reconsidering the instruction to avoid error. *Davis v. Consolidated Oil & Gas, Inc.*, 802 P.2d 840, 843 (Wyo.1990).

Errors of substantive law contained in the language of an instruction require reversal if the error is prejudicial. *Bigley v. Craven*, 769 P.2d 892, 895 (Wyo. 1989) (*quoting Cervelli v. Graves*, 661 P.2d 1032, 1036 (Wyo.1983)). In reviewing the content of a challenged jury instruction, the charge is considered as a whole. *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.*, 843 P.2d 1178, 1182 (Wyo.1992). To measure the degree of prejudice, jury instructions are viewed in the light of the entire trial, including the allegations of the complaint, conflict in the evidence on critical issues and the arguments of counsel. *City of Cheyenne v. Simpson*, 787 P.2d 580, 581–82 (Wyo.1990) (*quoting Condict v. Whithead, Zunker, Gage, Davidson & Shotwell, P.C.*, 743 P.2d 880, 886 (Wyo.1987)). The goal of our review is to determine if the charge presents a comprehensive, balanced and fundamentally accurate statement of the governing law to the jury. *Kemper Architects, P.C.*, 843 P.2d at 1182; *Sims v. General Motors Corp.*, 751 P.2d 357, 365 (Wyo.1988) (*quoting Norman v. State*, 747 P.2d 520, 523 (Wyo.1987)). The charge is deemed adequate if it is not likely to confuse or mislead the jury. *Bigley*, 769 P.2d at 895. "The fact that an instruction may have been more precisely drafted or drafted in a way more favorable to a party does not warrant reversal for a new trial." *Triton Coal Co., Inc.*, 800 P.2d at 512.

State Farm objected to the giving of Instruction No. 23 because the instruction misinformed the jury about the nature of the relationship between the Shraders and State Farm. Instruction No. 23 stated:

In the interest of the public, the law declares that there are certain classes of contracts where a duty of good faith and fair dealing is imposed in addition to any duties stated in the agreement. The public service nature of the insurance business and the unequal bargaining relationship between insurer and insured make the first party insurance contract an agreement where this duty of good faith and fair dealing is imposed.

*The obligations of good faith and fair dealing encompass qualities of decency and humanity inherent in the responsibilities of a fiduciary. Insurers hold themselves out as fiduciaries, that is, as entities having a duty to act primarily for the benefit of those they undertake to serve.* With that public trust must go appropriate private responsibility.

(Emphasis added.) State Farm asserts that the giving of Instruction No. 23 created prejudicial error by stating State Farm had a fiduciary relationship to the Shraders.

The Shraders argue that the language of Instruction No. 24, when read together with Instruction No. 23, "very clearly" expressed the exact relationship between insured and insurer. Instruction No. 24 stated:

There is implied within every insurance policy a duty of good faith and fair dealing. While this duty is fiduciary in nature, it does not create a fiduciary relationship. In the insurance context, the implied covenant of good faith and fair dealing requires that each party is prevented from interfering with the other's right to benefit from the contract. The insurer is not required to place the insured's interest above its own as would be the case where * * * the insurer were a fiduciary.

The Shraders read Instructions No. 23 and 24 as stating that State Farm did not have a fiduciary relationship to the Shraders, but rather had some duties which are fiduciary in nature or like a fiduciary.

A duty that is "fiduciary" in nature arises when the insurer exercises an element of control over the insured's litigation. *See Western Casualty and Surety Co. v. Fowler*, 390 P.2d 602, 606 (Wyo.1964). The court in *Craft*, 572 F.2d at 569 properly summarized:

Under third party liability coverage, when the insured is sued by a third party, the insurance company takes over the defense of the suit and the insured cannot settle the matter without the permission of the insurer. It is this control of the litigation by the insurer coupled with differing levels of exposure to economic loss which gives rise to the "fiduciary" nature of the insurer's duty. See *Crisci v. Security Co. of New Haven, Conn.*, 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (1967). In the uninsured motorist situation there is no

element of "control" of the insured's side of the litigation by the insurance company which would give rise to a "fiduciary" duty. It does not necessarily follow that the insurer is completely free of any obligation of good faith and fair dealing to its insured, since the latter duty is based on the reasonable expectations of the insured and the unequal bargaining positions of the contractants, rather than the insurance company's "control" of the litigation. See *Richardson v. Employers Liability Assurance Corp.*, 25 Cal.App.3d 232, 102 Cal. Rptr. 547 (1972). *Accord Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769, 772–73 (1991) and *MFA Mut. Ins. Co.*, 574 S.W.2d at 721.

We hold Instruction No. 23 misled the jury and resulted in prejudicial error. The language of Instruction No. 23 states that State Farm had a "fiduciary" duty to the Shraders. This is an inaccurate statement of the law. State Farm did have a duty of good faith and fair dealing to the Shraders, but not a "fiduciary" duty. *Craft*, 572 F.2d at 569; *MFA Mut. Ins. Co.*, 574 S.W.2d at 720–21.

State Farm also objected to Instruction No. 31, which stated:

If you find for the Plaintiffs that the Defendant has breached its duty of good faith and fair dealing, then you should award such sum as you believe will fairly and justly compensate the Plaintiffs for the damages you believe they sustained as a result of the breach of duty by the Defendant.

In determining the Plaintiffs' damages, you should consider any of the following elements for each Plaintiff which you find resulted from the breach:

 a. Emotional distress or mental anguish caused by the breach.

 b. Loss of enjoyment of life resulting from the breach. This should not duplicate any other element of damages.

 c. Loss of earnings caused by the breach.

State Farm argues that only economic damages, such as loss of earnings, should be recoverable in tort for a breach of the implied covenant of good faith and fair dealing. This is not a correct statement of the law in Wyoming.

In *McCullough*, 789 P.2d at 861, we acknowledged that recovery of compensatory damages in tort was permitted for the breach of the duty of good faith and fair dealing. Damages in tort " 'provide necessary compensation for insureds and incentive for insurers to settle valid claims.' " *Id.* at 859 (*quoting White*, 730 P.2d at 1018). The proper measure of compensatory damages is "the amount which will compensate a claimant for *all* detriment proximately caused by the tortfeasor's breach of duty." *Atlas Const. Co. v. Slater*, 746 P.2d 352, 359 (Wyo.1987) (emphasis in original). The scope of damages includes all the direct injury suffered " '*whether it could have been anticipated or not.*' " *White*, 730 P.2d at 1018 (*quoting Crisci v. Security Ins. Co. of New Haven, Conn.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 18, 426 P.2d 173, 178 (1967)) (emphasis in original). The Restatement (Second) of Torts § 903 (1979) defines compensatory damages as "the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him." Compensatory damages include those damages for harm to pecuniary interests and damages sustained when a tort causes bodily harm, emotional distress, humiliation, and fear and anxiety. Restatement (Second) of Torts, *supra*, at §§ 903–905. The position State Farm urges would unfairly restrict the recovery of compensatory damages by an injured insured.

We hold the scope of available compensatory damages for a breach of the duty of good faith and fair dealing includes damages for harm to pecuniary interests and emotional distress. *Crisci*, 58 Cal.Rptr. at 19, 426 P.2d at 179. There is a limitation, however, upon the recovery of damages for emotional distress for a breach of this duty. *Gruenberg*, 108 Cal.Rptr. at 489, 510 P.2d at 1041; *Anderson*, 271 N.W.2d at 378. We agree with the court in *Gruenberg*, that to recover damages for emotional distress, the insured must allege that as a result of the breach of the duty of good faith and fair dealing, the insured has suffered substantial other damages, such as economic loss, in addition to the emotional distress. *Gruen-*

*berg,* 108 Cal.Rptr. at 489, 510 P.2d at 1041. *See* Restatement (Second) of Torts, *supra,* at § 905 cmt. c. The economic losses may include loss of earnings, inability to pay creditors, loss of business, costs of litigation brought against the insured as a result of the breach and medical expenses. *Gruenberg,* 108 Cal.Rptr. at 489–90, 510 P.2d at 1041–42. This limitation is imposed to prevent fictitious claims for emotional distress and preserve judicial resources. *Crisci,* 58 Cal.Rptr. at 19, 426 P.2d at 179.

The Shraders alleged substantial damages for loss of earnings as a part of their cause of action for breach of the duty of good faith and fair dealing. Therefore, the jury was entitled to receive evidence of damages for emotional distress. We do not find prejudicial error in the giving of Instruction No. 31.

We have considered the remaining issues regarding jury instructions and find no prejudicial error. We also find no abuse of discretion in submitting the special verdict form to the jury. W.R.C.P. 49.

### F. *Attorney's Fees*

State Farm disputes the right of the Shraders to recover attorney's fees for breach of the statutory duties stated in Wyo. Stat. § 26–15–124. State Farm broadly contends that the insured seeking to recover on a claim for benefits under uninsured motorist coverage should be treated as a third party claimant for purposes of this provision. We do not read Wyo.Stat. § 26–15–124 in such a restrictive manner.

 The legislature, in adopting Wyo. Stat. § 26–15–124, has chosen to provide a statutory means of protecting an insured who has suffered a loss from annoying and expensive litigation. *State Sur. Co. v. Lamb Const. Co.,* 625 P.2d 184, 188 (Wyo.1981) (*quoting Schweigert v. Beneficial Standard Life Ins. Co.,* 204 Or. 294, 282 P.2d 621, 626 (1955)). Wyo.Stat. § 26–15–124 provides, in pertinent part:

> (a) Claims for benefits under a life, accident or health insurance policy shall be rejected or accepted and paid by the insurer or its agent designated to receive the claims within forty-five (45) days after re-ceipt of the proofs of loss and supporting evidence. Exceptions to the time of forty-five (45) days shall be made for accident and health insurance claims if there is any question as to the validity or the amount of the claim and the question is referred to the Wyoming state medical peer review committee for adjudication.

> \* \* \* \* \* \*

> (c) In any actions or proceedings commenced against any insurance company on any insurance policy or certificate of any type or kind of insurance, or in any case where an insurer is obligated by a liability insurance policy to defend any suit or claim or pay any judgment on behalf of a named insured, if it is determined that the company refuses to pay the full amount of a loss covered by the policy and that the refusal is unreasonable or without cause, any court in which judgment is rendered for a claimant may also award a reasonable sum as an attorney's fee and interest at ten percent (10%) per year.

The purpose of this statute is to encourage the prompt settlement of justifiable claims. *Herrig,* 844 P.2d at 495. *See* Caroll J. Miller, Annotation, *What Constitutes Bad Faith On Part of Insurer Rendering It Liable For Statutory Penalty Imposed for Bad Faith In Failure to Pay, Or Delay In Paying, Insured's Claims,* 33 A.L.R.4th 579 (1984 & Supp.1994) (discussing similar statutory provisions in other states). The statute permits the recovery of attorney's fees and interest as a form of compensatory damages in contract when an insurer commits a breach of the parties' agreement by unreasonably or without cause refusing to pay the full amount of a covered loss. *Herrig,* 844 P.2d at 495; *State Sur. Co.,* 625 P.2d at 188. Wyo.Stat. § 26–15–124 does not provide the same scope of remedies that compensatory damages in tort permit for a breach of the duty of good faith and fair dealing. *McCullough,* 789 P.2d at 860.

State Farm relies upon our holding in *Herrig* to argue that attorney's fees should not have been recoverable until the liability of the uninsured motorist was determined by litigation or settlement. In *Herrig,* third party claimants brought an action directly

against the insured's automobile insurer seeking attorney's fees and other damages. We held that a court may award a third party claimant attorney's fees under Wyo. Stat. § 26–15–124(c) only under limited circumstances when:

> (1) the third-party claimant has reduced his liability claim against an insured to judgment or has reached a settlement agreement with the insured and insurer; (2) the insurer subsequently has refused to pay the judgment or the settlement amount to the extent covered by the policy; and (3) the refusal to pay has been determined to be unreasonable or without cause in an action to collect on the judgment or to enforce the settlement agreement.

*Herrig,* 844 P.2d at 495 (footnote omitted). The holding of *Herrig,* however, is not applicable to the Shraders' claim for uninsured motorist benefits.

Uninsured motorist coverage, as we have determined, is first party insurance. As a matter of public policy, the insured, paying for the uninsured motorist coverage mandated by Wyo.Stat. § 31–10–101 is entitled to expect prompt payment of justifiable claims resulting from an accident as required by Wyo.Stat. § 26–15–124(a). If the insurer questions the validity of a claim for uninsured motorist benefits or the amount of damages sought, the insurer is permitted to reject the claim. *Id.*

The Shraders submitted a claim for benefits as the insureds of State Farm. They were not third party claimants. State Farm admits that during the months following the Shraders' claim, State Farm "never denied coverage or refused to pay any claim." Instead, State Farm contends the parties could not settle on the amount of the damages suffered by the Shraders. Under Wyo.Stat. § 26–15–124(a), the statutory period for the payment of first party insurance benefits payments began when the insurer received proof of loss and the supporting evidence. *Darlow,* 822 P.2d at 824. The jury was entitled to receive evidence of the Shraders' submission and demand for payment to determine if State Farm's refusal to pay was "unreasonable or without cause."

In *Arnold,* 707 P.2d at 164–65, this court determined that an insured seeking attorney's fees under Wyo.Stat. § 26–15–124(c) could recover if the refusal to pay a claim for uninsured motorist benefits was unreasonable or without cause. We reaffirm that attorney's fees and interest may be recoverable under Wyo.Stat. § 26–15–124(c) when an insurer unreasonably or without cause refuses to pay a justifiable claim for uninsured motorist benefits.

State Farm also contends that the amount of attorney's fees awarded by the district court was erroneous because it exceeded the amount the Shraders agreed to pay in a contingent fee agreement. We need not address this argument. Because all issues of this case are being remanded for a retrial, the district court will be free to apply its discretion to any award of attorney's fees under Wyo.Stat. § 26–15–124(c), should the Shraders again prevail. The existence of a contingent fee agreement is merely one of the factors which may be considered to assess the reasonableness of any award under the lodestar test adopted by this court in *UNC Teton Exploration Drilling, Inc. v. Peyton,* 774 P.2d 584, 595 (Wyo.1989).

## G. *Directed Verdict Or Judgment Notwithstanding The Verdict*

Finally, we turn to Appeal No. 93–27. The Shraders argue that the district court erred in granting a directed verdict in favor of State Farm. The district court ruled, as a matter of law, that the evidence did not support the jury's finding of willful and wanton misconduct. Therefore, no punitive damages were awarded to the Shraders. We reverse the district court's decision and remand for a new trial.

At the time of trial, W.R.C.P. 50(a), 818–822 Wyo.Rptr. CXI (1992) (hereinafter Former Rule 50) permitted the district court to grant a motion for a directed verdict either at the close of an opponent's evidence or at the close of all evidence. *Carey v. Jackson,* 603 P.2d 868, 876–77 (Wyo.1979). *See* W.R.C.P. 50(a) (effective Jan. 12, 1993 and permitting court to grant a judgment as a matter of law). A directed verdict precluded

consideration by the jury of a cause of action in which the facts were so sufficiently clear that the law required a particular result. *Carey,* 603 P.2d at 877 (*quoting* 9 Charles A. Wright and Arthur Miller, *Federal Practice & Procedure, Civil* § 2521 at 537 (1971)). When a verdict was returned, Former Rule 50 permitted the district court to grant a judgment notwithstanding the verdict following the entry of judgment:

> (b) *Motion for judgment notwithstanding the verdict.*—Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the moving party may move not later than 10 days after the entry of judgment to have the verdict and judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with the party's motion for a directed verdict.

Former Rule 50(b).

State Farm made a motion for a directed verdict at the close of the Shraders' presentation of evidence. The motion for a directed verdict was renewed at the close of all the evidence. However, the district court did not act on these motions. Instead, the issue was presented to the jury. The jury returned a special verdict finding willful and wanton misconduct. State Farm then filed a motion seeking a "Directed Verdict on the issue of punitive damages, with judgment for defendant on Plaintiffs' claim for punitive damages, notwithstanding the verdict."

The State Farm motion was filed on September 8, 1992. The entry of final judgment did not occur until December 2, 1992. In *Chopping v. First Nat. Bank of Lander,* 419 P.2d 710, 716 (Wyo.1966), *cert. denied,* 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 998 (1967), we held that the premature filing of a motion for judgment notwithstanding the verdict did not deprive the court of jurisdiction to consider the motion. However, we must treat the district court's ruling as a judgment notwithstanding the verdict rather than a directed verdict.

■ Motions for a judgment notwithstanding the verdict should be "cautiously and sparingly granted." *Erickson v. Magill,* 713 P.2d 1182, 1186 (Wyo.1986). Appellate review of a judgment notwithstanding the verdict requires this court to determine "whether the evidence is such that without weighing the credibility of the witnesses, or otherwise considering the weight of the evidence, there can be but one conclusion reasonable persons could have reached * * *." *Id. See Rhoades,* 863 P.2d at 629 (stating similar standard of review for directed verdicts). We consider the evidence in the light most favorable to the party against whom the motion is directed, giving all reasonable and legitimate inferences to such evidence. *Rhoades,* 863 P.2d at 629; *Carey,* 603 P.2d at 877.

■ The Shraders argue that the evidence produced at trial disclosed a lengthy and calculated course of conduct by State Farm which was intentionally directed to deprive the Shraders of the full amount due for their claim for benefits. The evidence supporting this course of conduct included: arbitrarily assigning a percentage of fault for the accident to Shrader during the initial investigation despite proof that the accident was entirely the fault of the uninsured motorist; the failure to disclose to Terry Shrader his potential damages for lack of consortium; the practice of State Farm which evaluates the performance of adjusters based on the average dollar amount of settlements and encourages minimum offers; and the pattern of State Farm's misrepresentations about the conduct of the accident investigation and the value of the Shraders' claim. Overall, the Shraders argue that this evidence demonstrates a pattern of misconduct by State Farm sufficient to sustain an award of punitive damages. State Farm responds that the evidence does not support a finding of willful and wanton misconduct. In essence, State Farm contends the evidence does not establish outrageous conduct.

Punitive damages may be awarded when an insurer breaches the duty of good faith and fair dealing. *McCullough,* 789 P.2d at 860–61. However, to award punitive dam-

ages for the intentional tort, willful and wanton misconduct must be proven. *Id.* at 861. We recognize: "Sometimes the line between conduct justifying punitive damages and less culpable conduct is fine." *Mayflower Restaurant Co. v. Griego,* 741 P.2d 1106, 1116 (Wyo.1987). However, our system of justice utilizes the ability of the fact finder, the jury, to make precisely such "fine" distinctions. *See Danculovich,* 593 P.2d at 191 (discussing jury's role in finding sufficient evidence of willful and wanton misconduct).

Punitive damages are not favored but should be allowed "with caution [and] within narrow limits." *Weaver v. Mitchell,* 715 P.2d 1361, 1369 (Wyo.1986). Therefore, the purpose of punitive damages, to publicly condemn some notorious action or inaction of a tortfeasor and deter others, requires that punitive damages be awarded only for "conduct involving some element of outrage, similar to that usually found in crime." *Id.* at 1369–70 (*citing* Restatement (Second) of Torts § 908 cmt. b (1979)). In *Danculovich,* 593 P.2d at 193, we examined the intent necessary to support a finding of willful and wanton misconduct:

> The intent in willful and wanton misconduct is not an intent to cause the injury, but it is an intent to do an act, or an intent to not do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable [person] would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another.

Punitive damages should not be awarded for "mere mistake resulting from inexperience, excitement or confusion, and more than mere thoughtlessness or inadventure, or simple inattention." *Id.* at 191.

Conceptually, an award of punitive damages represents a response to circumstances of aggravation present in the character of the conduct of an actor. Restatement (Second) of Torts, *supra,* at § 908 cmt. b; 2 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law Of Torts,* § 8:45 at 805–811 (1985). Other jurisdictions have chosen different language to define the aggravating circumstances. For example, in *McCullough,* 789 P.2d at 861, we quoted from the Supreme Court of Wisconsin's decision in *Anderson,* 271 N.W.2d at 379 to illustrate that aggravating circumstances are required for punitive damages for a breach of the duty of good faith and fair dealing. The Wisconsin court requires proof of oppression, fraud, or malice to recover punitive damages. *Anderson,* 271 N.W.2d at 379. However, this court has chosen to "remain consistent" with existing Wyoming law and award punitive damages on proof of willful and wanton misconduct. *McCullough,* 789 P.2d at 861 (citing Wyoming cases adopting this standard for punitive damages in tort and contract).

Considered from this perspective, we are unable to say that reasonable persons would reach only one conclusion from the evidence presented. *Erickson,* 713 P.2d at 1186. Viewed in the light most favorable to the Shraders, as we must on appeal, a jury could reasonably find willful and wanton misconduct in the settlement practices used by State Farm when taken as a whole. It is also conceivable that the jury could find insufficient evidence to support a finding of willful and wanton misconduct when properly instructed. We are satisfied, therefore, that the district court erred, as a matter of law, in granting a judgment notwithstanding the verdict in favor of State Farm on this issue. The jury's finding of willful and wanton misconduct, however, cannot be allowed to stand. The prejudice from the failure to bifurcate the proceedings and the erroneous instruction on fiduciary duty requires a new trial on all issues.

## IV. CONCLUSION

The complex issues presented in this appeal involved many previously undecided questions of Wyoming law. The parties chose to present these legal questions during a jury trial instead of seeking a declaratory judgment to interpret their respective rights and duties under the policy of insurance. The unsettled nature of the law made the proceedings below more difficult because of the varied precedent from other jurisdictions and the extensive argument from each party over the most desirable standard to apply. In accord with the principles of law contained

in this opinion, we must return this case to the district court for further proceedings.

Reversed and remanded for a new trial.

MACY, Justice, dissenting in part and concurring in part.

I disagree with part of the majority opinion and with the disposition of this case. I would affirm the trial court's judgment in all respects except that I would reverse the trial court's judgment notwithstanding the punitive damages verdict.

Before trial, State Farm moved for separate trials because, in part, the evidence of its offers to settle was not admissible to prove the Shraders' claim for damages under the uninsured motorist policy. W.R.C.P. 42(b); W.R.E. 408. The trial court denied the motion. Although State Farm filed a detailed motion *in limine* to exclude twelve other categories of evidence, it never moved to exclude the evidence of its settlement offers. Nor did State Farm request that instructions be given to the jury which would caution it that the evidence was inadmissible to prove one of the Shraders' claims.

The majority holds that the trial court abused its discretion by denying the motion for separate trials because State Farm was thereby prejudiced by the introduction of the evidence of its settlement offers. I disagree for several reasons.

First, a district court has only limited discretion under W.R.C.P. 42(b) to allow separate trials of multiple claims. *Carlson v. Carlson*, 836 P.2d 297, 305 (Wyo.1992). We have held: "A trial may be bifurcated only when the issues are clearly distinct and the bifurcation will not work a hardship against either party." *Id.* The issues are rarely, if ever, clearly distinct when, as here, a case combines a tort claim for breach of an implied contractual duty of good faith and fair dealing with a breach-of-contract claim, both of which arose from a breach of the same contract term. *Cf. Ames v. Sundance State Bank*, 850 P.2d 607 (Wyo.1993) (party asserting a tort claim of bad faith must prove that the contract was enforceable).

In this case, I would not second-guess the trial court's sound decision. The issues at trial were unavoidably interwoven, and State Farm has demonstrated no hardship which was caused by the trial court's ruling. I cannot reconcile the majority's holding with our opinion in *Carlson*. Considering the rule in *Carlson* which favors consolidated trials, I cannot agree with the majority that the trial court abused its discretion. The majority's holding leaves an aftermath of uncertainty for a judge who has been presented with a motion for separate trials.

Second, the trial court committed no cognizable error by admitting the evidence of State Farm's settlement offers. "We adhere to the rule that a limiting instruction, if desired, must be clearly requested by counsel." *Carlson v. BMW Industrial Service, Inc.*, 744 P.2d 1383, 1389 (Wyo.1987). *See* W.R.E. 105. "As a matter of trial strategy, counsel may decide against a limiting instruction to avoid emphasizing unfavorable testimony. . . . It is not the function of the trial judge to second-guess the strategy of counsel." *Sybert v. State*, 724 P.2d 463, 467 (Wyo.1986).

At trial, State Farm never moved to exclude the evidence of its settlement offers, although it did file an extensive motion to exclude other evidence. Nor did State Farm request, either during trial or at the close of the case, that instructions be given to the jury which would inform the jury that the evidence of its settlement offers was not to be considered on the breach-of-contract claim. Instead, State Farm utilized an all-or-nothing strategy toward the evidence: If the trial court denied its motion for separate trials, State Farm would permit the introduction of the evidence without making an objection.

We should not expect a trial court, on its own motion, to caution the jury when the trial attorneys have failed to alert the trial court to the need for a cautionary or limiting instruction. I would hold that the trial court committed no error by admitting the evidence of State Farm's settlement offers.

Third, excluding State Farm's offers to settle, found by the jury to have been extended in bad faith, would in no way further the purpose of W.R.E. 408. Both W.R.E. 408

and the tort of breach of duty of good faith and fair dealing were adopted, in part, to encourage dispute settlement. *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 36 (Wyo.1983); *McCullough v. Golden Rule Insurance Co.*, 789 P.2d 855, 859 (Wyo.1990).

I see no reason to encourage the making of settlement offers of the sort made by State Farm in this case. Yet, by remanding the case for a second trial, the majority rewards State Farm with a second chance to avoid liability for its actions.

I also disagree with the majority's holding that the instructions which mentioned fiduciary duty constituted prejudicial error. An improper jury instruction is reversible error only when an appellant demonstrates that he has been prejudiced. *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.*, 843 P.2d 1178, 1182 (Wyo.1992). The factors which are considered in determining the degree to which an appellant was prejudiced are:

> " '(1) the extent to which there is conflict in the evidence on critical issues; (2) whether or not the respondent's argument to the jury may have contributed to the instruction's misleading effect; (3) whether or not the jury requested a rereading of the erroneous instruction or of related evidence; (4) the closeness of the jury's verdict; and (5) the effect of other instructions in curing the error.' "

*Condict [v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.]*, 743 P.2d [880,] 886 [ (Wyo.1987) ] (quoting 1 California Forms of Jury Instruction, Procedures and Instructions § 1.13[3] (1987) (footnotes omitted)).

843 P.2d at 1182.

State Farm has failed to meet its burden to show prejudice. Instruction No. 23, which mentioned fiduciary duties, when considered alone, is misleading. State Farm does not cite to anything in the record which indicates that it was prejudiced. State Farm does not even allege that it was prejudiced by the jury instructions. Apparently, and without any authority, State Farm asks us to conclude that the instructions which were given were per se reversible error. I cannot agree.

The jury did not ask any questions about the challenged instructions. No evidence indicates that the vote on the verdict was close. Instruction No. 24 clarifies Instruction No. 23 by indicating that an insurer is not a fiduciary. None of the other *Kemper Architects, P.C.* factors seems to favor State Farm's contention in this case. I, therefore, must disagree with the majority's conclusion that these instructions constituted prejudicial error.

Finally, I would affirm the trial court's award of attorney's fees as being a proper exercise of discretion under WYO.STAT. § 26–15–124(c) (1991).

I concur in the remaining portions of the majority opinion. I would affirm the trial court's judgment and reverse only the ruling on punitive damages, and I would allow the verdict, along with the punitive damages award, to stand.

ROONEY, Justice (Retired), dissenting in part and concurring in part.

I dissent in Case No. 93–27, and I concur in Case No. 93–26, concurring *in the result only* as to one issue therein.

Donna R. Shrader and Terry Shrader (hereinafter "Insureds") brought an action against their insurance carrier, State Farm Mutual Automobile Insurance Company (hereinafter "Insurer"), for damages occasioned to them in a collision between their automobile, in which they were riding, and an automobile owned and operated by Seth T. Barbour, who was not insured. The insurance policy issued to Insureds by Insurer required payment to Insureds by Insurer for "damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*" up to the coverage limit of $25,000 per person or $50,000 per accident.

The matter was tried to a jury in district court. The jury answered the issues presented to it by the district court in a special verdict form as follows:

> 1. What are the amount of damages the Shraders are legally entitled to collect from the owner or driver of the uninsured vehicle? (Exclude medical expenses)

| Donna R. Shrader | $ 70,000 |
| Terry Shrader | $ 9,500 |

2. Did the defendant[,] State Farm[,] breach its duty of good faith and fair dealing owed to the plaintiffs?

Yes X No 

3. If your answer to question 2 was "yes[,"] what total amount of damages do you find [was] sustained by the plaintiffs from the breach for:

| Donna R. Shrader | $ 25,000 |
| Terry Shrader | $ 25,000 |

4. Did the defendant, State Farm, breach its statutory duty by unreasonably and without cause refusing to pay the full amount of a loss covered by the policy?

Yes X No 

5. Did the defendant, State Farm, through its officers, and/or employees, engage in willful and wanton misconduct so that punitive damages should be awarded later?

Yes X No 

Thereafter, the court granted Insurer's motion, which had been previously taken under advisement, for a directed verdict on the issue of willful and wanton misconduct—the basis for the award of punitive damages.

The matter is before us on an appeal by each party. Farmers Insurance Exchange filed an amicus curiae brief in support of Insurer's position in Insureds' appeal.

### Case No. 93–27: Insureds' Appeal

Insureds word the issue in this appeal:

When a jury verdict of first party bad faith is supported by substantial evidence and that bad faith was intentional, dishonest, and institutionalized, should the trial court be allowed to disregard that same jury's verdict of willful and wanton misconduct[?]

Insurer words it:

Was the jury's finding that the Shraders were entitled to punitive damages unsupported by substantial evidence, such that the District Court correctly granted Appellee State Farm's motion for directed verdict on the issue of punitive damages?

Dissenting from the majority of the Court, I would affirm the granting of a directed verdict by the trial court against Insureds on the issue of punitive damages.

The impropriety of the recognition of a bad faith tort and of an award of punitive damages under the circumstances of this case was adequately addressed in the well reasoned dissents of Justice Thomas and Justice Golden in *McCullough v. Golden Rule Insurance Co.*, 789 P.2d 855 (Wyo.1990), a case relied upon herein by the majority of the Court. That said in those dissents does not need to be repeated here. This case exemplifies the difficulty, if not the impossibility, of establishing a clear line between right and wrong under the holding of the majority in *McCullough*. The potential for inconsistencies and uncertainties under the majority holding in *McCullough* should be removed.

Accordingly, I would overrule *McCullough* and affirm the grant of a directed verdict by the trial court in this case.

### Case No. 93–26: Insurer's Appeal

Insurer presents seventeen issues in this appeal. Among them are:

2. Does the insured have the burden of proving that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability?

3. Does a claim for uninsured motorist benefits become ex contractu and thus payable only after the extent of damages recoverable from the uninsured motorist has been determined?

4. Under Wyoming law can an insured bring a direct action against the insurer to adjudicate the amount of damages an insured is legally entitled to collect from the driver of an uninsured vehicle?

The other issues concern "bad faith" or "good faith and fair dealing."

Insureds present five issues, including:

1.) Given the public policy of Wyoming Statute § 31–10–101, must the insureds under uninsured motorist coverage reduce their claim to judgment before they can

proceed against their insurance company for its breach of contract and bad faith?

. . . .

4.) Did the jury instructions as given prejudice the rights of State Farm under the law?

5.) Did the trial court abuse its discretion in assessing costs and attorney's fees against State Farm?

The other two issues concern the tort of bad faith.

As stated in the majority opinion, the question is whether or not the fault of the uninsured motorist and the amount of damages suffered by Insureds may be determined in a direct action against Insurer. The majority of the Court holds that they can, referring to similar holdings in other states. It notes that the language of the policy provides for payment of that amount which Insureds are "legally entitled to collect from the owner or driver of an *uninsured motor vehicle* " and that such requires the ability to establish fault on the part of the uninsured motorist which gives rise to damages and to prove the extent of those damages. As long as the factual issues as to liability and damages can be properly placed by the fact finder, I agree with the majority of the Court that a direct action would be permissible. However, I believe that it would be difficult to properly place such issues. The danger of over emphasis on the contractual situation to the detriment consideration of the tort liability is great. A just result would seem to be more certain if the tort issues were first established in an action between Insureds and the uninsured motorist. I believe that such would not only be proper but be preferred. Something seems to be wrong in allowing the uninsured motorist to depart without penalty if he was the cause of the damages. In the event he is worth millions of dollars, why should an insurance company, a stranger to him, be required to pay for the damages caused by him? A more just outcome would seem to result in mandating the establishment of liability and amount of damages in a separate action, with the amount "legally entitled to collect" being that subject to collection but not collectible from the uninsured motorist as a practical matter.

In any event, the **amount** "legally entitled to collect" was not properly determined in this case. The extent of fault, and therefor the amount of damage award, was not properly determined. Wyoming is a comparative negligence state. The jury was not properly instructed to determine the degree of the negligence of each party and thus the amount of damages Insureds were "legally entitled to collect." Such may more exactly be inquired into in a direct action against Insurer, and the damages adjusted accordingly. Consequently, I specially concur *with the result* reached by the majority of this Court for the return of this case to the district court, but I would return it only because of the failure to have the comparative negligence of the parties properly determined and not for the reason recited in the majority opinion. However, I emphasize, as stated *supra,* my belief that a more just result would be obtained if the issues were first determined through an action between the parties to the incident.

With reference to the failure to properly consider the comparative negligence of the parties in this case, as noted *supra,* **the special verdict form made no reference or provision for allocating fault.** The verdict form offered by Insureds contained a question requiring a determination of the percentage of fault "attributable to each of" the drivers of the vehicles, but it was refused.

The court gave thirty-four separate instructions. Instruction No. 20 provided in part pertinent to comparable fault:

The plaintiffs' damages caused by bodily injury in this case must be determined on the basis of comparable fault of the parties involved in the accident. . . .

The Wyoming law applicable to this case would require a reduction in the amount of damages awarded to any party by the percentage of fault[,] if any, that is attributable to that party. The percentage of fault, if any, of the parties seeking to recover damages is compared to each of the persons involved in an accident. The damages of an injured party are reduced by

the percentage of fault found attributable to that recovering party.

There was nothing in the instruction **direct-ing** the jury to apportion fault, and there was no other instruction given with reference to it.

Several other instructions emphasize only the necessity to determine causation of the accident **by Insureds** without any reference to the percentages thereof attributable to each driver, e.g.:

2. ... In order to determine what is owed on the cont[r]act of insurance, you will need to determine all of the plaintiffs' damages caused by the bodily injury to Donna Shrader.

Instruction No. 4.

Damages must be reasonable. If you should find that the Plaintiffs are entitled to a verdict, you may award them only such damages as will reasonably compensate them for such damages as you find, from a preponderance of the evidence in the case, that they have sustained.

Instruction No. 13.

In this action, the Plaintiffs have the burden of proving by a preponderance of the evidence the following:

1. That the negligence of the uninsured motorist was a proximate cause of injury and damage to the Plaintiffs; and

2. The nature and extent of the injuries claimed to have been so suffered, the elements of Plaintiffs' damage and the amount thereof.

Instruction No. 15.

If you find that Donna R. Shrader is entitled to damages from the accident by the evidence and instructions, then you may award her spouse[,] Terry Shrader[,] a sum which will constitute fair and reasonable compensation to him for the loss or impairment of his wife's ability to perform services as a wife due to her injuries.

Instruction No. 19.

Accordingly, I specially concur **only in the result** reached by the majority of the Court on the issue concerning the propriety of a direct action against Insurer.

**Addendum**

I concur with the majority of the Court with reference to the other issues in this case.

THOMAS, Justice, dissenting.

I find I also must dissent from the opinion of the majority of the Court in this case. Essentially, my views are quite like those of Justice Rooney, except for the fact that I would not approve the direct action against the insurer in such an instance.

It is an anathema that, in a jurisdiction in which the very mention of insurance in a trial between individuals can result in a mistrial, the evils justifying that rule can be readily avoided by a first-party action against the insurer. While insurance carriers are used to running uphill in litigation, it does seem oppressive to require them to climb the wall.

Furthermore, strong public policy considerations support the denial of an insurer's application to intervene in underlying tort litigation. "Clearly the policy of the law is to keep the issue of insurance out of personal injury litigation." *Cromer v. Sefton,* 471 N.E.2d 700, 704 (Ind.App.1984) (holding insurer is not permitted to intervene in underlying tort action to litigate coverage issues). W.R.E. 411 reflects this policy by generally prohibiting the introduction of evidence of insurance. As the court noted in *Allstate Insurance Co. v. Atwood,* 319 Md. 247, 572 A.2d 154, 159 (1990), permitting insurance companies to intervene and become a party to a tort proceeding leads to multiple problems, including forcing the insured to defend against both the resources of the plaintiff and the insurer.

*State Farm Mut. Auto. Ins. Co. v. Colley,* 871 P.2d 191, 195 (Wyo.1994).

In the popular vernacular, the playing field hardly seems level in this instance. In fact, it seems more vertical with the insurer at the bottom. Truly, the only way to distinguish the policy articulated in *Colley* is to note that the insurance carrier cannot intervene when it wants to, but it must participate as a party when it does not want to.

I am troubled by the following features of the court's opinion:

1. Permitting the direct action against the insurer, rather than requiring tort liability to be determined between the insured and the alleged tortfeasor.

2. A statement in the majority opinion, which seems to serve as the fulcrum, is articulated as a holding that "the Shraders established that they were 'legally entitled' to **seek** indemnification for the damages proximately caused by the negligence of the uninsured motorist." (Emphasis added.) The language of the policy is "legally entitled to collect."

3. The conclusion that the language of the State Farm policy attempts to restrict the right to bring an action against the uninsured motorist. The policy addresses only resolution of the question between State Farm and the insured, and it seems clear to me it does not violate WYOMING DEPARTMENT OF INSURANCE REGULATIONS, Ch. 23, § 8 (1989).

4. In light of the regulatory authority of the insurance commissioner, I do not think the unequal bargaining power is a factor in this case as the court found in *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855 (Wyo.1990).

5. I am not satisfied that the accounting of damages provided by the Shraders to State Farm necessarily serves as unchallenged proof of damages in the context of good faith or bad faith.

6. The number of complexities, as illustrated by the majority opinion, arising from the joinder of the several claims is very troublesome.

Perhaps, as much as anything, this case demonstrates the wisdom of the views espoused by Justice Golden and me in our dissenting opinions in *McCullough*. It demonstrates, almost to the ultimate, the product of permitting an insured to assert the independent bad faith tort cause of action against his own insurer.

The critical error in the majority opinion starts with the support it finds in other jurisdictions for the right of the insured to bring the action for uninsured motorist benefits directly against the insurance company. Our *McCullough* precedent is invoked to justify the right to bring the first-party bad faith tort action. It then justifies the joinder of those two causes of action. I cannot find among the authorities cited by the majority any jurisdiction in which heretofore these claims have been joined in one trial.

Permitting the action for uninsured motorist benefits to be tried at the same time as the action for first-party bad faith tort puts the insurer in a truly untenable position. From this day forward, in the absence of legislative relief, an insurance carrier will be unable to do anything about uninsured motorist coverage benefits other than to pay the policy limits to its insured. The result in this case is related to neither good faith nor bad faith. It simply establishes that good faith and bad faith are both irrelevant. The risk of being wrong in its determination as to liability or the amount of damages simply subsumes the right of the carrier to test either issue with its insured as long as these claims can be tried together.

I would much prefer resorting to the rule in the more conservative jurisdictions that requires the resolution of the tort liability arising out of the accident prior to the pursuit of contract claims by the insured against the insurer. *E.g., Baxter v. Royal Indem. Co.*, 285 So.2d 652 (Fla.Dist.Ct.App.1973), *cert. discharged,* 317 So.2d 725 (Fla.1975); *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716 (Mo.Ct.App.1978); *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 858 P.2d 380 (1993); *Radlein v. Indus. Fire & Cas. Ins. Co.*, 117 Wis.2d 605, 345 N.W.2d 874 (1984). As pointed out in *Pemberton,* a judgment against the uninsured motorist is not required to establish the insured is legally entitled to collect, but that right can be established by a settlement with the insurance company, a settlement with the uninsured motorist, arbitration with the insurance company, or an action against the insurance company. I recognize statutory provisions were relied upon in some of these decisions, but it may be that the only recourse now open to insurance carriers in Wyoming is to seek legislative relief. If we are to recognize the right of the insured to bring an action direct-

ly against the insurer for uninsured motorist benefits, then we clearly should require that claim to be resolved before proceeding to deal with the contract claims. I am satisfied any other approach turns out to be so unfair to insurance carriers as to be unreasonable.

With respect to some of the additional concerns I have with the majority opinion—the majority asserts that the policy language attempts to restrict the right of the Shraders to bring an action against the other motorist. I cannot agree the policy rationally can be given that effect. A much more logical construction is that the policy language would only apply if no such action were brought, as in this case. Given the statutory language and the regulations of the insurance commissioner, the policy language cannot possibly have the effect of restricting the right of the insureds to sue the tortfeasor and, consequently, I would not declare the contractual provision void. Instead, it should be given effect if any lawful construction is possible. I submit I have suggested a lawful construction, and the contractual language does result in a condition precedent to the action of the Shraders. It should not be ignored that the insurance commissioner approves the policy language under Wyoming statute. WYO. STAT. § 31–10–101 (1989).

The majority relies upon the provisions of WYO.STAT. § 31–10–101 to hold public policy of Wyoming requires a direct action against the insured. The statute clearly is intended to eliminate any unequal bargaining power between the parties since the coverage is required, and the coverage must be written under provisions approved by the insurance commissioner. The majority invokes *McCullough,* pointing out that the "recovery in tort for the breach of the duty of good faith and fair dealing is premised upon the existence of a special relationship created by the unequal bargaining power that an insurer has over an insured." *State Farm Mut. Auto. Ins. Co. v. Shrader,* No. 93–26, and *Shrader v. State Farm Mut. Auto. Ins. Co.,* 882 P.2d 813, 825 (Wyo.1994). I respectfully submit the majority is stacking public policies in this instance, and it should be recognized that the regulatory power attached to uninsured motorist coverage erases the policy justification found in *McCullough,* in this instance.

I believe the justification for joining the action against the insurer for the uninsured motorist benefits with the claim for first-party bad faith tort is not adequately justified by the precedents injected in the majority opinion, and it seems to me we have gone too far in this case to attempt to penalize an insurance carrier. While, like all of us, insurance companies may have their faults, I do not think they are such bad citizens in our society that we need to create special rules to deprive them of fairness and justice in our legal institutions.

I would reverse the ruling joining the claim for uninsured motorist benefits with the tort claim for first-party bad faith. Those claims must be tried separately to achieve any sort of fairness.