**WESTERN CASUALTY AND SURETY COMPANY, Appellant (Defendant below),**

v.

**Klair FOWLER and Alba Fowler, d/b/a Fowler's, Appellees (Plaintiffs below).**

No. 3213.

Supreme Court of Wyoming.

March 24, 1964.

Lathrop, Lathrop & Tilker, Carleton A. Lathrop and James A. Tilker, Cheyenne, for appellant.

Loomis, Lazear, Wilson & Pickett, Edward T. Lazear, Cheyenne, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Plaintiffs were insured by defendant against liability with coverage limited to $10,000, when an employee claimed damages for injuries suffered in a fall from plaintiffs' ladder. The employee offered to settle her claim for $2,813.80, but when this offer was refused by the insurance carrier, the employee sued plaintiffs for $18,197.05. Upon trial the jury awarded the employee $18,102.50, and the court gave judgment accordingly. Thereafter, in or-

der to avert an appeal, the employee accepted $15,000 in full satisfaction of the judgment, the insurer paying $10,000, and plaintiffs paying $5,000. Plaintiffs then brought action against defendant claiming defendant acted in bad faith in rejecting the employee's offer of settlement. Following trial to a jury, plaintiffs were awarded $5,000, and judgment against defendant for that sum was given plaintiffs. Defendant appeals.

Although appellant states at length its grounds for reversal, they sum up to mean: (1) The evidence was insufficient to show bad faith in refusing to accept the settlement which would have relieved the insured from any damage payment to the employee; and (2) there was error in refusal to give the jury defendant's offered instruction defining bad faith as, "an intentional disregard of the financial interests of the insured or a failure to use honest and fair judgment in evaluating the probability or chances of success."

Evidence shows the defendant's adjuster was told the ladder from which the employee fell was a light ladder, rather flimsy, and its condition caused the employee to fall; that the ladder had a tendency to be wobbly and could be easily upset; that the adjuster told plaintiffs not to admit any liability, that it would show negligence on "our" part; that the adjuster told one plaintiff that "if you are going to get on our side of the fence you have got to admit no liability or negligence. If you do you will lose your defense"; that the adjuster told plaintiffs not to continue paying the employee's salary, that if "we" did we would admit negligence, so plaintiffs did stop paying the employee's salary; that when plaintiff recommended to defendant that the $2,813.80 be paid, the adjuster said the company would only pay $500; that one of plaintiffs told defendant's lawyer and the adjuster that the ladder was defective; that there was a screw, a nut, in the ladder that sometimes worked loose and fell off; that the ladder was loose, that the screws were loose, that the connections

to support it were loose; that one of the plaintiffs many times pointed out to the adjuster some loose screws; that one of the plaintiffs had fallen from the ladder because it was light and easily upset; that plaintiffs provided the employee with an unsafe, wobbly ladder; and that defendant's lawyer was told all the facts about the accident.

The injured employee testified that the adjuster for the insurance company was her first visitor after the accident, when she was in the hospital, and before any offer of settlement was made; that the adjuster had a piece of paper and told her she had to sign it, that it was something he had to have for the doctor; that the adjuster talked about $500 and that the $500 was all the insurance her employer had; and that the adjuster did not ask about the ladder, what she was doing on the ladder, how often she used it, why or how 'she fell, or how it happened.

The injured employee's husband testified that before the negligence trial the adjuster told him that plaintiffs only had $500 insurance and if he did not accept that, and "decide to take this thing to court you won't get a damn dime"; that the adjuster had the ladder with him and when the adjuster started to pick it up it collapsed; that the ladder had straps on the sides that are supposed to hold it apart, but the straps did not hold it apart, they would just collapse with the ladder, and when the witness reached down and started to pick the ladder up it just folded up and fell over.

The other plaintiff, who also worked in the store, testified the tenor of the adjuster's conversation before the negligence trial was that plaintiffs were to go along with the adjuster's idea, they were not to admit anything so far as the accident was concerned, that it was carelessness on the employee's part, and that the adjuster never asked her about the ladder. All this evidence being made available to the insurance adjuster and through him to the insurance company, bore materially upon the ques-

tion of the company's good faith in rejecting the offer of settlement made by the claimant. Such evidence was certainly strongly adverse to the insurance company's position.

In 7 Am.Jur.2d, Automobile Insurance, § 157, p. 487, which deals with particular facts affecting questions of good faith, it is said, "it appears from the decisions that it may be indicative of either such bad faith or negligence that the evidence as to liability and damages, in the action by the injured claimant, was strongly against the insured." See Tennessee Farmers Mutual Insurance Company v. Wood, 6 Cir., 277 F.2d 21; Brown v. Guarantee Insurance Company, 155 Cal.App.2d 679, 319 P.2d 69, 66 A.L.R.2d 1202; also Annotations in 40 A.L.R.2d 196, 203, III, §§ 10, 11; Cowden v. Aetna Casualty and Surety Company, 389 Pa. 459, 134 A.2d 223; Boerger v. American General Insurance Company of Minnesota, 257 Minn. 72, 100 N.W.2d 133.

Also, in 6 Am.Jur., Proof of Facts, Insurance, at p. 420, the first element listed among those said to constitute important facts tending to prove bad faith on the part of the insurer in failing to accept a compromise offer where judgment is subsequently entered against the insured in excess of policy limits, is, "Presence of strong evidence against insured as to liability and damage."

The investigator did not uncover, nor was there produced to him or to the company, any substantial contrary evidence before the settlement offer was made and rejected. Both the adjuster and the insurance company chose to ignore the strong showings of negligence on plaintiffs' part which were brought to their attention. Thus, the bad-faith refusal of the claimant's modest offer of settlement resulted in subjecting plaintiffs to a clear, avoidable loss of $5,000.

After the company had rejected the first settlement offer, the lawyer to whom the employee went after the accident raised the offer, and when that offer was also rejected he filed the negligence action. After the suit was filed, the attorney again offered

to settle the employee's claim for $10,000, but that offer was likewise rejected.

Furthermore, by the testimony of defendant's own investigator, it appears that as late as when he made his sixth report of the accident, after being told what the evidence concerning liability would be, he still persisted in telling the company he saw no liability and informed the company there was nothing new to offer, although the investigator said his job was to obtain facts. Strangely, the investigator also testified that when he tilted the ladder to one side and put his foot on the right side where the first rung is, it tipped over and he reported that fact to the company.

■ While the above recount is but a sample of the evidence which strongly showed plaintiffs had furnished for the employee's use the unsafe and defective ladder from which the employee fell and sustained injury, and that this evidence was made available to defendant's agent and representative, it is sufficient to have warranted the jury's conclusion that there was bad faith on the part of the company to disregard it and refuse to accept the claimant's offer to settle for the modest sum of $2,813.80. This bad faith is emphasized by other evidence which shows the $2,813.80 represented only the employee's actual hospital bill, doctor bills, loss of wages, and other expenses directly due to her injury.

The question of the sufficiency of the insurer's investigation was also for the jury's determination. In 7 Am.Jur.2d, Automobile Insurance, § 157, p. 487, it is said that evidence of bad faith is present when the insurer fails to investigate the claim properly so as to be able to intelligently assess the probabilities. Although the investigator testified he did not make the decisions but only reported to his principal, the insurance company, the facts as he found them, the actions of the investigator in failing to inquire of the injured employee about the condition of the ladder, what she was doing on the ladder, how often she used it, why or how she fell, or how the accident happened, were not in keeping with a proper and adequate investigation upon which to form an intelligent judgment as to the employers' liability. The investigator's further actions when he learned what the testimony of the employers and others would be in admonishing them not to admit what they had represented to him were the true facts and in effect threatening both the injured claimant and her husband that they would not receive a "damn dime" unless they accepted a $500 settlement and misrepresenting to the claimant and her husband that $500 was all the insurance which the employers had, was unconscionable and can hardly be said to properly accompany an investigation of the claim.

Appellant argues that the defense attorney impeached one of the plaintiffs because that plaintiff agreed his testimony in the negligence action had been that he never knew the ladder was unsafe or anybody had found it to be so. That testimony, fairly considered, referred to his knowledge prior to the accident. However, he further testified that after the accident he found the ladder was loose; that a number of screws were loose; the connections to support the ladder were loose; and that he had told both defendant's lawyer and the adjuster the ladder was defective just before going to trial. On cross-examination, this same plaintiff also said the reason he wanted the insurance company to pay something was because he had provided the employee with an unsafe, wobbly ladder.

Appellant also insists that the testimony of a former attorney for the employee that he was "somewhat worried about a directed verdict" in the employee's suit against plaintiffs, and the testimony of counsel for the insurance company who defended the personal injury action that it was his opinion there was "no liability" on the part of the insured, established without contradiction there was a serious question as to liability, and appellant says:

"Appellee might argue that the jury could disregard the testimony of plaintiffs' own witness, as well as that of Mr. Swainson, and draw their own conclusion as to the question of liability.

To this we would answer that the jury was given no instructions as to the elements of negligence or the effect of contributory negligence. They had no standards or guides upon which to make a determination of *legal* liability." (Emphasis theirs.)

The issue before this court is not whether plaintiffs' negligence or the employee's contributory negligence caused the accident which injured the employee; that matter is now res judicata. The crucial factor here is whether evidence available to defendant upon proper investigation strongly showed there was liability of the employers and was, in bad faith, disregarded by the insurer when offer of settlement was made. The testimony of those lawyers did not reach the vital question of proper investigation, and the strong character of available adverse evidence. The worry of employee's counsel that there might be a directed verdict against his client was not shown to have been communicated to defendant, and no evidence justifying that concern appears in the record. Also the conclusion of defendant's counsel that there was no liability to the employee on the part of the insured was not expressed until when testifying as a witness during the negligence trial which was long after the rejection of the settlement offer. As a matter of fact, this counsel was not employed by the insurer until after the rejection was made and after the claimant's suit was filed against the insured, nor was the opinion of this counsel ever shown to have been communicated to the insurer. Consequently, the opinion of the insurer's counsel could not possibly have entered into the decision to reject the offer of settlement. Of course, it is obvious that counsel's conclusion was not shared in by the jury whose verdict was bottomed upon the same evidence as that available to the insurer when the settlement offer was rejected.

Appellant's further point that plaintiffs' participation in the settlement of the judgment rendered against them evidenced their own doubt as to their liability is somewhat difficult to understand. If any just conclusion may be drawn from their settlement of the judgment, it would seem to be that they felt an appeal would be useless because they had known from the start that they were liable to their employee because of their own negligence.

■ The court refused defendant's offered instruction giving definition of "Bad faith" and "Good faith." It is unnecessary to pass upon the correctness of those definitions because the court adequately and properly instructed the jury that it was the defendant's duty to exercise intelligence, good faith, and honest and conscientious fidelity to the common interest of the plaintiff as well as of the defendant and give at least equal consideration to the interest of the insured, and, if it fails to do so, it acts in bad faith. The court also instructed that in weighing the advisability of accepting or rejecting a settlement offer, the insurance company had a right to take into consideration its own financial interest as well as the duty to take into consideration the interest of the insured. Further instruction told the jury not to consider or give any weight to the fact that the employee subsequently recovered a judgment for more than the amount of the settlement offer, but that "Bad faith" or conversely "good faith" must be determined as of the time the offer was made and rejected and that good faith meant a bona fide belief that the insurer had a good possibility of winning the lawsuit or that the claimant's recovery in the lawsuit would not exceed the limits of the insurance policy.

Finding no error, the judgment appealed from is affirmed.

Affirmed.