Deborah M. Kellam and George E. Powers, Jr. of Sundahl, Powers, Kapp & Martin, Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

---

**W. Todd JARVIS and Lisa L. Jarvis, husband and wife, Appellants (Plaintiffs),**

**v.**

**FARMERS INSURANCE EXCHANGE, a California Insurance Company, Appellee (Defendant).**

**No. 96–164.**

Supreme Court of Wyoming.

Dec. 4, 1997.

---

TAYLOR, Chief Justice.

Appellants brought suit against their insurer alleging bad faith failure to settle a claim. A pedestrian allegedly injured in a car/pedestrian accident filed suit against Mr. Jarvis and his employer. Appellants claim their insurer's negligent failure to settle the claim before trial cost them unnecessary independent attorney fees and other monetary and emotional damages. The district court dismissed their claim pursuant to W.R.C.P. 12(b)(6), finding that a third-party claim must

be premised on a judgment in excess of policy limits.

We affirm.

## I. ISSUES

Appellants, W. Todd Jarvis and Lisa L. Jarvis (the Jarvises), present a single issue for review:

> Whether an insured is barred from asserting a claim for third party bad faith merely because of a fortuitous verdict in the underlying personal injury action in which the insured was the Defendant?

Appellee, Farmers Insurance Exchange (Farmers), responds:

> 1. Can a claim for third-party bad faith exist in the absence of a verdict in excess of policy limits?

## II. FACTS

On January 25, 1993, Mr. Jarvis was involved in a car/pedestrian accident on westbound I–80. The accident occurred when Mr. Jarvis braked to avoid hitting a pedestrian crossing the highway at the scene of another accident which had taken place just minutes before. The braking action caused Mr. Jarvis' truck to spin on black ice, and as the truck moved backwards into the median, the passenger side door mirror apparently grazed the pedestrian, Robert Grewe (Grewe). Despite Grewe's protests, he was taken from the scene to the hospital, where he was discharged shortly thereafter with nothing more than bruises.

At the time of the accident, the Jarvises were covered under an automobile insurance policy issued by Farmers. Mr. Jarvis reported the accident to his insurer and filed an accident report with the State of Wyoming the day after the accident. On or about February 2, 1993, Mr. Jarvis received a telephone call from Grewe who stated he would be willing to settle the matter for a payment of a few thousand dollars. Mr. Jarvis did not agree to such payment and called his insurance agent to advise him of the telephone call he had received from Grewe.

On February 9, 1993, a claims adjuster from Farmers stopped by to see Mr. Jarvis and took photographs of the truck. Mr. Jarvis gave the claims adjuster the records he had of the accident, including the accident report filed with the State. Farmers did not initiate any further communication with Mr. Jarvis for nine months. However, on two different occasions, once in July 1993 and again in the fall, Mr. Jarvis questioned his insurance agent as to the status of Grewe's claim. Mr. Jarvis was assured that the claim was being handled "professionally and competently * * *."

Mr. Jarvis received no further information regarding the claim until he was served with a lawsuit on November 22, 1993, claiming damages in the range of $820,000.00 and naming Mr. Jarvis and his employer as defendants.

On December 8, 1993, during a telephone conversation with a Farmers claims adjuster, Mr. Jarvis was informed that some time earlier, an inexperienced adjuster had "dropped the ball." The Jarvises were told that previous negotiations had stalled when Farmers offered to settle for $2,000.00 to $4,000.00, but Grewe insisted on a payment of $6,000.00 to $8,000.00. On December 9, 1993, Mr. Jarvis received a letter from Farmers informing him that he might wish to retain his own attorney, at his own expense, for potential damages above the policy limits and claims not covered under the defense clause of his policy. Mr. Jarvis followed the advice and hired his own attorney.

After the lawsuit was filed, Farmers made several offers to settle the lawsuit, including an offer to settle for the $50,000.00 policy limits, but all offers were refused. The case went before a jury in February 1995, which resulted in a verdict which absolved Mr. Jarvis and his employer from all liability and awarded Grewe nothing. Despite the favorable verdict, the Jarvises filed a third-party bad faith claim against Farmers alleging that Farmers' negligence in the initial negotiations forced them to incur independent attorney fees, suffer lost wages, and suffer emotional anxiety and stress from having to endure the trial process. Farmers responded by filing a motion to dismiss the Jarvises' claim pursuant to W.R.C.P. 12(b)(6) because

the Jarvises could not allege a judgment in excess of policy limits.

After a hearing on the motion to dismiss, the district court issued its decision letter dismissing the Jarvises' claim. The order granting defendant's motion to dismiss was entered on April 17, 1996, and this appeal timely followed.

## III. STANDARD OF REVIEW

A motion to dismiss under W.R.C.P. 12(b)(6) is a drastic remedy and will be granted only when it is certain from the face of the complaint that the plaintiffs are unable to assert any facts which would entitle them to relief. *Darrar v. Bourke*, 910 P.2d 572, 575 (Wyo.1996) (*quoting Cranston v. Weston County Weed and Pest Bd.*, 826 P.2d 251, 254–55 (Wyo.1992)); *Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo.1992). On review, all the facts stated in the complaint are taken as true and viewed in the light most favorable to the plaintiffs. *Darrar*, 910 P.2d at 575 (*quoting Cranston*, 826 P.2d at 254–55); *Herrig*, 844 P.2d at 490.

## IV. DISCUSSION

The sole issue on appeal is whether an insured must plead the existence of a judgment in excess of policy limits as a prerequisite to a claim of third-party bad faith against an insurer. This is a case of first impression in Wyoming, as no previous case has been presented which asserted this claim in the absence of a judgment or settlement beyond policy limits.

■ "A cause of action for 'third party' bad faith will lie when a liability insurer fails in bad faith to settle a third-party claim within policy limits against its insured." *Herrig*, 844 P.2d at 490. Wyoming first recognized this claim in *Western Cas. & Sur. Co. v. Fowler*, 390 P.2d 602, 605–06 (Wyo.1964). There, an employee sued an employer after falling from a ladder. Although the employee offered to settle the claim well within the employer's insurance policy limit of $10,-000.00, the insurer refused the employee's offer. At trial, the employee was awarded over $18,000.00. Eventually, the matter was settled when the insurer paid the policy limit,

and the insured/employer was required to pay $5,000.00. The insured then successfully sued his insurer for the difference between the settlement and the insurance policy limits. On appeal, the insurer argued that the evidence was insufficient to show bad faith and that the district court erred in its instructions defining bad faith. *Id.* at 603.

We affirmed the district court's definition of the duty of the insurer to the insured as follows:

> [I]t was the defendant's duty to exercise intelligence, good faith, and honest and conscientious fidelity to the common interest of the plaintiff as well as of the defendant and give at least equal consideration to the interest of the insured, and, if it fails to do so, it acts in bad faith. * * * "Bad faith" or conversely "good faith" must be determined as of the time the offer was made and rejected and that good faith meant a bona fide belief that the insurer had a good possibility of winning the lawsuit or that the claimant's recovery in the lawsuit would not exceed the limits of the insurance policy.

*Id.* at 606.

Since *Fowler*, we have addressed a third-party bad faith action in Wyoming only as it is distinguished from other claims against an insurer. *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 826 (Wyo.1994); *Herrig*, 844 P.2d at 490; *Darlow v. Farmers Ins. Exchange*, 822 P.2d 820, 827 (Wyo.1991). In both *Shrader* and *Herrig*, we described the claim solely in the context of an excess judgment. *Shrader*, 882 P.2d at 826; *Herrig*, 844 P.2d at 490.

The Jarvises argue that under the language in *Fowler*, Farmers breached its duty at the time it failed to continue to negotiate with Grewe and that the breach directly caused them damage other than any payment to Grewe. They contend that the existence of an excess judgment is, therefore, not an element of their claim but merely one type of damage which can be recovered in a third-party bad faith action. Based on this reasoning, the Jarvises now ask us to expand the context of a third-party bad faith claim to

situations in which an excess judgment does not exist. We respectfully decline to do so.

The separate duties found in first-party and third-party bad faith actions have been clearly delineated. *Shrader*, 882 P.2d at 825–26. Situations involving only the insured and its insurer cannot be compared to those in which a third party brings a claim against the insured and independently determines whether to be reasonable in settlement or in valuation of his claim. Thus, the Jarvises' reliance on the language in cases describing the duty of the insurer in first-party bad faith actions will not apply when deciding whether, apart from duty, an excess judgment is a prerequisite in third-party bad faith actions. *See Darlow*, 822 P.2d at 827 (the duty owed to an insured is often characterized by the nature of the claim).

The Jarvises cite to *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130 (Utah App.), *cert. denied*, 853 P.2d 897 (Utah 1992) in support of their argument. There, the Utah appeals court overturned summary judgment in favor of the insurer, holding that the insurer's breach of duty occurred at the time it *unreasonably* rejected a settlement offer. In that case, the facts demonstrate that the insured was exposed to a substantial excess judgment. The court held that payment of the excess judgment after final appeal did not preclude the insured's bad faith claims. *Id.* at 132–39. However, responding to a policy argument presented by State Farm Mutual Automobile Insurance Company, the court determined that an excess judgment *may* not be a necessary prerequisite to a third-party bad faith claim:

> Moreover, State Farm seems to ignore the fact that an insured who is ultimately victorious against a third party or who incurs a judgment below the policy limits would have great difficulty stating a claim for bad faith. While our decision does not completely rule out that possibility, the existence of an excess judgment is the single most important indicia that an insurer's decision not to settle within the policy limits was unreasonable. Conversely, the entry of a judgment below the policy limits is compelling evidence that the insurer acted with sound judgment. Thus, the chances

of an insured successfully maintaining a claim for bad faith in the face of such evidence would appear to be slim indeed.

*Id.* at 141 n. 23. We do not find this sufficient foundation on which to build a new road to insurer liability. Moreover, the Jarvises fail to cite to any case which found a cause of action for third-party bad faith in the absence of an excess judgment or settlement.

To the contrary, we find the holding in *Allstate Ins. Co. v. Campbell*, 334 Md. 381, 639 A.2d 652 (1994) persuasive. There, the insurer declined to settle a claim when the party injured in an automobile accident offered to settle within the policy limits. The offer was subsequently withdrawn and the insured received the insurer's recommendation that he obtain counsel with respect to any excess liability. The insured requested payment of his independent attorney fees, but the insurer denied the request. The insured then filed suit for declaratory judgment based on bad faith for failure to settle. The insurer moved to dismiss the case as premature, and prior to the court's ruling, the insurer settled the claim within policy limits. On appeal, the sole issue was whether an insured must be exposed to an excess judgment as a prerequisite to a claim for bad faith for failure to settle. *Id.* 639 A.2d at 653–56.

■ Finding that an excess judgment was necessary to the accrual of a third-party bad faith claim, the Maryland court noted:

> An insurer does not have an absolute duty to settle a claim within policy limits, although it may not refuse to do so in bad faith. 7C [J.A.] Appleman, [*Insurance Law and Practice*,] § 4711 at 390 [ (Berdal ed., 1979) ]. But, while an insurer has a duty to enter into good faith negotiations "where reasonable and feasible" to settle a claim within policy limits, * * * there is no requirement that it "rush to the settlement of a claim" against an insured to avoid an excess judgment. 7C *Appleman, supra*, § 4711 at 377.

*Campbell*, 639 A.2d at 659. As did the Maryland court, we decline to extend a cause of action for bad faith for failure of the insurer

to initially settle a claim which is followed by a judgment or settlement within policy limits.

Neither do the facts of this case compel a different result. As we stated in *Fowler*, 390 P.2d at 606, "the crucial factor * * * is whether evidence available to defendant upon proper investigation strongly showed there was liability of the [insured] and was, in bad faith, disregarded by the insurer when offer of settlement was made." This necessarily assumes that strong evidence regarding the insured's liability exists. Indeed, the facts as pled by the Jarvises, and as found by the jury, established that Grewe's claim against Mr. Jarvis was totally without merit. Were we to adopt the Jarvises' argument, an insurer would be subject to suit for failing to settle even the most frivolous of claims if the person claiming against the insured was willing to settle within policy limits at the outset. We will not open that door.

## V. CONCLUSION

A cause of action by an insured against the insurer for a failure, in bad faith, to settle a claim will not accrue prior to the entry of a judgment against the insured in excess of policy limits. Affirmed.