F I L E D
United States Court of Appeals
Tenth Circuit

APR 22 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOLENE CRAWFORD; LEONARDO
SANTIAGO,

    Plaintiffs-Counter-Defendants -
Appellees,

v.

INFINITY INSURANCE COMPANY,
also known as Infinity Insurance Group,
a Florida corporation,

    Defendant-Counter-Claimant -
Appellant.

No. 01-8029
(D.C. No. 97-CV-88-B)
(D. Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR** and **PORFILIO**, Circuit Judges, and **STAGG,** District Judge.[**]

---

This action is an appeal of a verdict obtained by appellees in a third-party bad faith

action. Appellees, Leonardo Santiago ("Santiago") and Jolene Crawford ("Crawford")

were involved in an automobile accident. Crawford subsequently brought suit against

---

[*]This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. The court generally disfavors the citation
of orders and judgments; nevertheless, an order and judgment may be cited under the terms
and conditions of 10th Cir. R. 36.3.

[**]The Honorable Tom Stagg, United States District Judge for the Western District of
Louisiana, sitting by designation.

Santiago, who had a $15,000 insurance policy with appellant, Infinity Insurance Company ("Infinity"). Santiago and Crawford eventually settled the lawsuit without the consent of Infinity, and judgment was entered against Santiago in excess of the policy limits. As part of the settlement, Santiago assigned to Crawford 95% of his right to pursue Infinity for bad faith in failing to defend him and settle the case within the policy limits. Thereafter, Crawford and Santiago instituted this bad faith litigation. A jury found that Infinity acted in bad faith in failing to defend and settle Crawford's underlying personal injury claim. However, the jury found that only a portion of the stipulated judgment was fair and reasonable. Infinity's post-trial motions were denied. For the reasons hereinafter set forth, we affirm.

## I. BACKGROUND

On March 14, 1995, Santiago and Crawford were involved in an automobile accident in Jackson, Wyoming. The accident was caused in whole or in part by the negligence of Santiago. On June 23, 1995, attorney Jeffrey Tennyson filed a lawsuit on behalf of Crawford against Santiago. The summons and complaint were served on Santiago, and his insurance carrier was notified of the lawsuit. Settlement negotiations began in August and both parties anticipated that the case would settle with the payment of the $15,000 policy limit. Tennyson, however, was unwilling to accept the $15,000 in full and final settlement of the action until such time that he was satisfied that Santiago did not have significant personal assets which he might be able to contribute toward a

settlement.

There is a dispute in the testimony regarding what occurred with respect to the settlement negotiations, but it appears that Tennyson on three separate occasions asked William Thompson, the Infinity adjuster, for a $15,000 check or draft to be sent to him so that once Crawford became satisfied that Santiago did not have significant personal assets, a settlement could be effectuated immediately. Tennyson testified that Thompson agreed to provide him a check or draft as requested, but the draft was never sent.

When Tennyson did not receive a check by October 12, 1995, he faxed a letter to Thompson giving him forty-eight hours within which to complete the settlement by forwarding him a check. Despite the express language of the letter indicating that if a settlement check was not received in forty-eight hours Crawford would seek a default judgment against Infinity, Thompson did not comply. Thompson chose to place the draft in the regular mail. Tennyson waited a period of five days during which he did not receive the draft or any communication from Thompson. On October 19, 1995, Tennyson obtained a default against Santiago. Tennyson and Crawford were unwilling to set aside the default.

After the entry of default, Infinity retained an attorney, Mike Mullikin, who sought to have the default set aside. Mullikin initially was hired for this sole purpose so that Infinity could assert the defense of accord and satisfaction. During this period of time, Infinity did not inform Santiago that it had missed the opportunity to settle within policy

limits or that default had been entered against him. When the court refused to set aside the default, Infinity advised Santiago that the case was ongoing nearly six months after the default was taken. Infinity did not explain to Santiago that he now had personal exposure to liability or how Infinity intended to protect him from that exposure.[1]

Santiago retained an independent attorney, Timothy Bommer, who contacted Infinity, expressly requesting that it tell Santiago whether it intended to fully indemnify him for the amount of any damages to be set by the district judge at an upcoming hearing on damages. Infinity refused, claiming it would not compromise its settlement position with Crawford.

Shortly before the hearing on damages, Santiago, at the advice of Bommer, terminated Mullikin and entered into a consent agreement with Crawford, including a stipulated judgment in the amount of $700,000. Crawford did not waive her right to attempt to collect the judgment against Santiago, although the agreement did require her to initially attempt to collect the judgment from Infinity before pursuing Santiago. Based upon the stipulation, the district court assessed Crawford's damages at $700,000 and entered judgment in her favor, and against Santiago, for that amount. Thereafter, Santiago and Crawford filed this bad faith lawsuit against Infinity.

---

[1]However, Infinity notified its own reinsurer of the potential liability that Infinity might have as a result of its actions. It also *internally* decided that it would pay any judgment eventually entered against Santiago, regardless of whether the eventual judgment exceeded $15,000.

The bad faith case went to trial before a jury. The jury found: (1) that Infinity acted in bad faith by failing to defend Santiago and settle his claim; (2) that Infinity's breach of the covenant of good faith and fair dealing was a proximate cause of damages suffered by Santiago; (3) that Santiago's settlement with Crawford was reasonably necessary to protect his interests; but (4) that only $300,000 of it was fair and reasonable; and (5) that Santiago was entitled to $7,500 in economic losses and $10,000 in emotional distress damages. Judgment was entered, and Infinity filed post-trial motions seeking to have the verdict set aside and to obtain a new trial. On appeal, Infinity seeks judgment as a matter of law.

## II. LAW AND ANALYSIS

A. Standard Of Review.

This court reviews <u>de novo</u> the denial of a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), applying the same legal standard as the district court. <u>See</u> <u>Tyler v. RE/MAX Mountain States, Inc.</u>, 232 F.3d 808, 812 (10th Cir. 2000). In evaluating a Rule 50(b) motion, this court examines all the evidence admitted at trial, construing that evidence and the inferences from it in the light most favorable to the non-moving party, and should refrain from making credibility determinations and weighing the evidence. <u>See</u> <u>id.</u> Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." <u>Finley v. United States</u>, 82 F.3d 966, 968 (10th

Cir. 1996). Applying this standard of review, we must determine whether the district court erred in denying Infinity's motion for judgment as a matter of law after a trial on the merits.

B.    Discussion Of Law.

1.    Third Party Bad Faith.

Under Wyoming law, a bad faith claim is a tort action based on the theory that insurers owe a duty of good faith to policyholders not to unreasonably deny a claim for benefits under the policy. See McCullough v. Golden Rule Ins. Co., 789 P.2d 855, 857-58 (Wyo. 1990). In Wyoming, a cause of action for third party bad faith will lie when a liability insurer fails in bad faith to settle a third-party claim within policy limits against its insured. See Jarvis v. Jarvis, 948 P.2d 898 (Wyo. 1997); Herrig v. Herrig, 844 P.2d 487, 490 (Wyo. 1992). Wyoming first recognized this claim in Western Cas. & Sur. Co. v. Fowler, 390 P.2d 602, 605-06 (Wyo. 1964). The Wyoming Supreme Court has established the duty of the insurer to its insured as "the duty to exercise intelligence, good faith, and honest and conscientious fidelity to the common interest of the plaintiff as well as of the defendant and give at least equal consideration to the interest of the insured, and, if it fails to do so, it acts in bad faith." Jarvis, 948 P.2d at 900.

The appellees argue that when Infinity failed to hire a lawyer to defend Santiago and allowed a default judgment to be issued, it breached its insurance contract, which

gave Santiago the legal right to assume control of the lawsuit and enter into a consent judgment with Crawford. They further assert that the jury's finding that Infinity acted in bad faith in failing to accept a reasonable settlement offer is supported by the evidence. Moreover, they claim that it obligates Infinity for that portion of the consent judgment which was found to have been fair and reasonable, as well as the economic and emotional losses suffered by Santiago. Infinity counters that, absent a "real" (non-stipulated, non-collusive) judgment in excess of policy limits, no tort has been committed under Wyoming law.

Infinity contends that in Wyoming, one of the necessary basic elements, implicit in <u>Fowler</u> and explicit in <u>Jarvis</u>, is the entry of judgment *on the merits* against the insured in an amount in excess of the policy limits.[2] However, dicta from <u>Jarvis</u> indicates otherwise. The <u>Jarvis</u> court, in discussing the failure of the plaintiffs in that case to cite support for their proposition, pointed out that "the Jarvises fail to cite to any case which found a

---

[2]Infinity attempts to support this argument by citing a Tenth Circuit decision applying Wyoming law in <u>Marathon Ashland Pipe Line LLC v. Md. Cas. Co.</u>, 243 F.3d 1232 (10th Cir. 2001). Another panel of this court affirmed the summary judgment for the insurer on the bad faith claim. When discussing the claim for third-party bad faith, the court summarily affirmed the district court's grant of summary judgment on the claim, noting that the Wyoming Supreme Court has held that "such a claim will not accrue until after a judgment has been entered against the insured in excess of the policy limits." <u>Id.</u> at 1250. The <u>Marathon</u> court, however, had no occasion to review what constitutes a "judgment" sufficient for a third-party claim to accrue under Wyoming law and addressed the merits of the third-party claim in one paragraph of a lengthy opinion addressing numerous other issues in great detail. Additionally, the Wyoming Supreme Court has spoken clearly on the question since the <u>Marathon</u> opinion. <u>See</u> <u>Gainsco Ins. Co. v. Amoco Prod. Co.</u>, 53 P.3d 1051 (Wyo. 2002).

cause of action for third-party bad faith in the absence of an excess judgment *or settlement*." Jarvis, 948 P.2d at 901. Additionally, in declining to extend the third-party bad faith cause of action to claims below the policy limits, the court explicitly stated, "we decline to extend a cause of action for bad faith for failure of the insurer to initially settle a claim which is followed by a judgment *or settlement* within policy limits." Jarvis, 948 P.2d at 901-02.

Furthermore, a review of relevant Wyoming jurisprudence reveals that the Wyoming Supreme Court would not require a "real judgment" and that "simply a settlement" would suffice for a third-party bad faith tort action.[3] Subsequent to the filing of briefs and oral argument herein, the Wyoming Supreme Court addressed the precise issue before this court, stated by that court as follows:

> The next question is, where a judgment in excess of policy limits has resulted from a settlement between the insured and the claimant rather than from a trial, and as part of that settlement the insured is insulated by a covenant not to execute or similar device, may the claimant, as the insured's assignee, pursue a third-party bad faith claim against the insurer?

Gainsco Ins. Co. v. Amoco Prod. Co., 53 P.3d 1051, 1059 (Wyo. 2002). The Wyoming Supreme Court has answered in the affirmative and its answer conclusively resolves the issues in this appeal.

---

[3]Infinity does not argue, as appellees contend, that contract principles prevent it from having any liability beyond the $15,000 limits of its policy of insurance with Santiago.

In Gainsco, Amoco entered into a well and lease service master contract with Andrews Trucking Company, wherein Andrews agreed to indemnify Amoco against liability for injury to or death of Andrews's employees and Andrews's subcontractors' employees, even if caused by Amoco's negligence. Andrews further agreed to insure this assumption of liability and obtained insurance from Gainsco. Amoco later sued Andrews under the contract's indemnity provision. Gainsco provided Andrews a defense and filed a third-party complaint against a subcontractor. However, Gainsco defended Andrews under a reservation of rights, denying coverage based on two policy exclusions. When Amoco informed Gainsco that it would settle within policy limits to avoid exposing Andrews to an excess judgment, Gainsco refused the offer. Through separate counsel, Andrews settled with Amoco on the following terms: "(1) Andrews would confess judgment in the amount of $716,490.80 plus interest and attorneys' fees; (2) Amoco would not execute against Andrews, but would only look to Gainsco; (3) Andrews would assign to Amoco any bad faith claims against Gainsco; and (4) Andrews would dismiss its indemnity claim against the subcontractor." Id. at 1055. When confronted with the third-party bad faith claim issue, the Wyoming Supreme Court, after a thorough analysis of conflicting views on the topic, concluded that the inclusion of a covenant not to execute in a settlement agreement between an insured and a claimant[4]

---

[4]The opinion makes this statement with the proviso of "under the circumstances of the case now before us." Id. at 1061. However, the circumstances of Gainsco and the case before this panel are similar enough for this reservation to be of no concern.

-9-

does not act to negate the fact that a judgment has been entered against the insured and, therefore, does not bar the claimant, as assignee of the insured, from pursuing a claim against the insurer for third-party bad faith. The existence of the judgment, with or without a covenant not to execute, is a detriment to the insured sufficient to support an assignable tort claim. Public policy favors this result in that it allows an insured to reach a reasonable settlement of a case being defended under a reservation of rights and it discourages an insurer from rejecting a reasonable settlement offer. The insurer is adequately protected by the requirement that such settlements be reasonable and by its ability to raise the issues of fraud and collusion.

Id. at 1061.

Infinity's challenge is simply that Wyoming tort law (as articulated in Jarvis) requires a judgment after a trial on the merits entered against the insured in excess of policy limits and that there was none here. In fact, Infinity admits that if a damages trial had been allowed to proceed, and if a judgment had been entered assessing Crawford's damages in excess of $15,000, Infinity would not have disputed the validity of an assignment, by Santiago to Crawford, of the entirety of his claim for damages. However, language within Jarvis, although dicta, and more importantly, direct language from Gainsco, supports the district court's conclusion that a consent judgment suffices under Wyoming law for a third-party bad faith tort claim. The settlement between Santiago and Crawford was sufficient for a third-party bad faith claim to exist. There was no error by the district court in denying Infinity's post-trial motions.

2.     Other Arguments Made By Infinity.

Infinity also contends that, even if a reasonable settlement could substitute for the requirement of an excess judgment, the jury found the settlement unreasonable and lessened the amount of the stipulated judgment.  However, the jury did make a finding of a "reasonable" amount, and this court concludes that this finding was sufficient to qualify as a reasonable settlement.

Next, Infinity contends that it did not fail to defend, thus the appellees cannot use a defense failure as justification for Santiago's actions.  The jury, however, found otherwise, and after a thorough review of the evidence, we agree with its findings.

Finally, Infinity asserts that the agreement between Santiago and Crawford was collusive, as Santiago had a financial interest in agreeing to an unreasonable settlement amount.  As succinctly stated by the Wyoming Supreme Court and quoted supra, "[t]he insurer is adequately protected by the requirement that such settlements be reasonable and by its ability to raise the issues of fraud and collusion."  The jury made a determination that the amount was unreasonable and adjusted the settlement figure accordingly.  Thus, this argument, as well as all of Infinity's other arguments, are without merit.

AFFIRMED.

Entered for the Court

Tom Stagg
District Judge

-11-